## MURPHREE *v.* NATIONAL LIFE & ACCIDENT INS. CO.

(Division B. Oct. 30, 1933. Suggestion of Error Overruled Jan. 8, 1934.)

[150 So. 534. No. 30706.]

(Division B. Jan. 8, 1934.)

[151 So. 748.]

For former opinion see 150 So. 534.

Shands, Elmore & Causey, of Cleveland, for appellant.

Maynard, **Fitzgerald** & **Venable**, of Clarksdale, for appellee.

Argued orally by **Dugas Shands** and **H. H. Elmore**, for appellant, and by **W. W. Venable**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On September 28, 1926, appellee company issued a policy of life insurance to S. R. Murphree, appellant's intestate, in the principal sum of five thousand dollars, premiums payable annually. The premiums were all duly paid up to September 28, 1931. Prior to the date last mentioned the insured had procured a loan on the policy in the sum of three hundred nine dollars and fifty-two cents, the interest on which had been paid up to the premium due date of the policy, September 28, 1931.

During the early part of September, 1931, the insured informed the field agent of the company that he desired to surrender the policy and to obtain at once the cash which would at that time be due him for the surrender and cancellation thereof. The field agent forwarded the policy to the home office of the company, and the company at once upon its receipt, and on September 14, 1931, entered the policy as canceled on its books and forwarded to its agent a check for thirty dollars and forty-eight cents, the check to be delivered to the insured when he signed a formal receipt therefor, which receipt was sent along with the check to the agent of the company.

The insured was seriously injured in an automobile accident on the evening of September 16, 1931, and was taken to a hospital, where he lingered and died on September 22, 1931. On the morning of September 17, 1931, the agent of the company, having received the check aforesaid, made a reasonable effort to deliver the same to the insured and to procure the signature of the insured to the receipt, without which the agent was not authorized to deliver the check; but, when the agent arrived at the hospital, the condition of the insured was such that the agent was not permitted to see him, and the check and unsigned receipt were returned to the company. The fact that the company had endeavored to accept the policy

for surrender and cancellation and had issued its check therefor was never communicated to the insured.

The policy contained the following provision on the subject of surrender: "Upon legal surrender of this policy to the Company at its Home Office within the grace period, the Company will pay in cash, not later than sixty days thereafter, as its surrender value, the full reserve on this policy computed on the date of default upon the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum, less a maximum amount at the end of the third policy year not exceeding two and one-half per cent. of the amount insured and thereafter decreasing, and less any indebtedness hereon or secured hereby."

Next after the foregoing stipulations there is a table of values, which shows a cash value after the policy has been in force five years of sixty-eight dollars per thousand or on a five thousand dollar policy of three hundred forty dollars. At the head of this table there is the following: "The values in the following table are for full paid policy years, subject to any indebtedness and will be adjusted proportionately for additional installments of premiums beyond the full paid policy years." This latter provision apparently has reference to policies on which the premium is paid semiannually or quarterly or in some periodical installment plan, other than the annual premium plan.

It will be noted that the cash surrender value as of date September 28, 1931, up to which date the premium had been fully paid, was three hundred forty dollars. The loan on which the interest had been paid up to September 28, 1931, was three hundred nine dollars and fifty-two cents. When the company drew its check and marked the policy canceled on September 14, 1931, it deducted the principal of the loan from the three hundred forty dollars, making the check for the balance of thirty dollars and forty-eight cents, thereby rebating nothing of the

paid premium from that date to September 28, 1931, and nothing on account of the interest on the loan, which interest had already been paid by the insured up to September 28, 1931. If this method of computation was correct on September 14th, then the same method would have been correct also had the surrender been six, eight, or ten months previous thereto—the insured would have received no more than the thirty dollars and forty-eight cents, the amount payable on, and within the grace period after, September 28th, which does not seem at all reasonable. There is no certain method of computation, if any at all, furnished in the policy by which to compute a surrender value previous to the due date of the premium; and, when we consider that it is the business of life insurance to keep policies alive, and that in other than the exceptional case it is to the interest both of the company and of the insured to preserve the policies and not to cancel them, we are strongly induced towards the conclusion that the only provision in this policy allowing surrender is that the surrender must be ''within the grace period'' after default in the premium, so that the later words in the stipulation in respect to the computation of the cash surrender value—''computed on the date of default''—may have a meaning which would belong to a natural and proper sequence.

Because of the obscurity produced by the language of the policy in regard to the permissible time of surrender and the method of computation if the surrender be before the premium date, we have concluded not to attempt to decide the question as to what exactly the said stipulations mean in that particular regard; but for the purposes of this case will assume that the stipulations do provide for a surrender before the due date of the premium, and we will proceed with a further consideration of the case on that assumption.

The facts which transpired at the time of the delivery of the policy to the field agent of the company by him to

be forwarded to the home office for surrender and cancellation, and the terms of the agreement or understanding on the part of the insured at the time of that delivery, are disclosed in the testimony of the field agent, whose testimony has all the appearance of a sincere effort on his part to speak the truth. There is no other reasonable conclusion to be drawn from those facts except that, when the delivery was made of the policy for cancellation, the proposal and offered agreement by the insured in so doing were that the company would immediately accept the policy for surrender, and would immediately thereupon pay the proper cash surrender value therefor—not that the company within sixty days should make the payment, or would promise to make the payment at some future time, but would actually make payment into the hands of the insured at once and without delay. The court and the jury could arrive at no other reasonable conclusion from all the evidence other than that just stated, and that the company so understood it is evidenced by the facts that the policy was promptly forwarded, was promptly acted upon by the issuance of the check which was promptly attempted to be delivered by the company's field agent upon its receipt by him. We must therefore determine the case upon the facts as thus established.

There are two ways and two only in which a policy of insurance in full and unimpaired force may be legally surrendered and canceled: First, under the terms written in the policy itself; and, second, under the terms of a subsequent oral or written agreement. If under the terms of the policy, then those terms must be adhered to as written in every material particular, and shall not be changed by either party in any obligatory way in the surrender or cancellation—this for the obvious reason that, if the obligatory features of those terms be abridged or enlarged or changed in any material way, then the surrender is not under those terms, but under something

subsequent to and different from them. If by a subsequent oral or written agreement, then every part of the said subsequent agreement shall have operation as to every material feature that it covers or includes, and, if the agreement is brought about by means of a proposal on one side and acceptance on the other, the acceptance must be in the exact, or substantially exact, terms of the proposal, and the acceptance must be communicated to the proposing party.

Let us first examine whether the surrender was made in accordance with the express terms contained in the policy. The express terms of the policy were that upon legal surrender the company will pay in cash not later than sixty days thereafter. If the surrender were under the terms of the policy, then nothing of an obligatory nature could be added to or taken from those terms, which were that the company would have the option and privilege to pay at any time within sixty days, and without any obligation to pay at once. But we have already shown in the statement of facts that the agreement or proposal which the insured offered, and solely under which he tendered the policy for cancellation, was that the payment should actually be made to him at once, not that there should be any privilege or option on the part of the company to pay at any time within sixty days. The company so understood and attempted to avail of that understanding, and in so doing it undertook to accept the surrender, not upon the obligation of the terms of the policy as written, but according to the subsequent terms tendered or offered by the insured. The fact that the company had the privilege or option to pay at any time within sixty days, and that the time that it did attempt to pay was a day and date within the sixty-day period, does not in legal effect alter the case, for, as we have already said, the terms, and the only terms, upon which the insurer proposed the surrender was that the acceptance should impose upon the company the obligation to pay

at once. The obligation to pay at once was not in the terms of the policy as written, from which it follows that the tender or proposal of the insured was of something subsequent to, and different in obligatory terms from, those contained in the policy, and, being different, was not under or in accordance with the terms of the policy as expressly therein written, and, since an acceptance must be in the terms of the offer, the attempted acceptance by the company was not of something under the terms of the policy, but outside thereof and different therefrom.

Having determined that the attempted surrender was not made under the terms of the policy, but under a subsequent modified agreement and understanding that the surrender should be upon the obligation and condition of immediate payment, then it follows upon familiar principles of law, and as already stated, that the acceptance of the proposal by the insured so to surrender must be made in the exact, or substantially exact, terms of the offer, and that the fact of such acceptance must be communicated to the offerer without which the acceptance remains inoperative and incomplete. It is undisputed that the acceptance in this case was never communicated to the insured, wherefore there was no completed cancellation of the policy, and it was still in force at the date of the death of the insured.

The judgment will be reversed and the cause remanded, with directions that the proper interest calculations be made and a judgment entered for appellant, the plaintiff, for the amount due on the face of the policy, less the loan after the interest calculations are applied.

Reversed and remanded, with directions.

On Suggestion of Error.

Griffith, J., delivered the opinion of the court on suggestion of error.

In its suggestion of error, appellee has urged with plausibility and force that there was no necessity for

any communication to the insured of the company's acceptance of the offer of cancellation proposed by the insured; that the insured made an offer of cancellation upon the terms that the company would respond, not by a promise of payment, but by the act of payment of the surrender value; that it was contemplated that the company would pay by its check; and that as soon as the company had drawn its check and, for the purpose of delivery to the insured, sent it to the company's agent, which was done at once, this act was a sufficient overt acceptance by the company although the check never passed out of the company's hands and the insured had received no word of what the company had done or intended to do.

There is a distinction between an offer which asks that the offeree promise to do something and an offer which proposes that the offeree shall do something; that is to say, between an offer to make an executory contract, and an offer in exchange for an act. In the latter case the performance of the act at the time and in the manner prescribed by the offer completes the contract and notice of the acceptance other than the overt performance of the act is generally unnecessary. 1 Williston on Contracts, sec. 88; 6 R. C. L., p. 607; 13 C. J., p. 284. The most frequent applications of the rule are where there are offers to members of the public, as, for instance, offers of rewards, and as to particular persons in orders for goods to be selected and shipped. But in cases of offers to the general public, as, for instance, in offers of rewards, it is not enough that an offeree shall enter upon the doing of the act; he must substantially complete it; and in cases of goods ordered it is not enough that the offeree shall merely enter upon some part of the work of filling the order, although done openly, as was held in Pioneer Box Co. v. Price Co., 132 Miss. 189, 96 So. 103, 29 A. L. R. 1349.

When the rule above mentioned is invoked and the do-

ing of the act stipulated in the offer is relied upon by the offeree as dispensing with the necessity of notice of acceptance, the act must have been performed, or at least it must have progressed to the point where what has been done cannot be undone or revoked by the offeree. It would not be dependable in law or sound in business administration to place the rule upon a less secure foundation. The check drawn by the company in this case remained at all times as completely within its control and as completely revocable as if it had never been taken out of the book of blanks upon which it was written. On the other hand, if the company had mailed the money to the insured in currency by registered letter or had sent a postoffice money order, then it could have been held, perhaps, that the act had progressed to the stage where it could be said to be substantially completed, although the money was not actually received before the death of the insured; for there, after the registered letter containing the money or postoffice money order was mailed, it would become an act irrevocable by the offeree, and the delivery to the offerer would, in point of law, be completed.

Suggestion of error overruled.