## Fidelity Mutual Life Insurance Co. v. Heltsley.

(Decided May 22, 1934.)

454

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT and CHARLES J. WHITE for appellant.

C. J. WADDILL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES.—Affirming.

On April 6, 1926, the Fidelity Mutual Life Insurance Company issued to Albert Newman Heltsley a policy of insurance on his life for $1,000. The insured's mother, Mary E. Heltsley, was made the beneficiary. On July 30, 1931, the insured procured a loan of $157 on the policy. On July 7, 1932, the insured and the beneficiary, Mrs. Mary E. Heltsley, executed and mailed to the company the following writing:

> "Surrender and Cancellation of Policy Contract. The insured and beneficiary under policy no. 394007, issued on the 5th day of April, 1926 on the life of Albert N. Heltsley of Ky. by the Fidelity Mutual Life Insurance Company of Philadelphia, Pa., do hereby, in consideration of payment of net

cash value of $54.95 and cancellation of all indebtedness under the policy, request a cancellation of said policy, and we jointly and severally, for ourselves and our legal representatives, hereby release and forever discharge the said The Fidelity Mutual Life Insurance Company from all actions, causes of action, suits, controversies, claims, and demands whatsoever, for and by reason of said policy No. 394007, or of any matter, cause, or thing connected therewith.

"In Witness Whereof, we have hereunto set our hands the 7th day of July; A. D. 1932.

"Witnesses:

"Willis T. Haywood, as to Albert Newman Heltsley, Insured

"Willis T. Haywood, as to Mary E. Heltsley, Beneficiary."

This writing was received by the insurance company at its Philadelphia office July 12, 1932, and on July 15, 1932, it mailed to its Louisville office its check for $54.95, payable to the insured. It is conceded that $54.95 was the net cash surrender value of the policy. On July 18, 1932, the Louisville office of the insurance company mailed to the insured at Madisonville, Ky., the check with a letter of that date which reads:

"Enclosed please find check to your order for $54.95 in full for surrender and cancellation of above numbered policy."

The insured died July 17, 1932, the day before the check and letter were mailed from Louisville. The check was returned to the company, which later issued another check for the same amount, payable to the beneficiary. Mrs. Heltsley refused to accept the check, and later brought this suit to recover the face amount of the policy less the amount of the loan with interest thereon.

The action was submitted to the trial court on the pleadings and an agreed stipulation of facts without the intervention of a jury, and a judgment was rendered in favor of the plaintiff, and the insurance company appeals.

It is its contention that the insured and beneficiary availed themselves of the contractual right to surrender

the policy when they mailed the policy together with the "Surrender and Cancellation of Policy Contract" to the insurer. The following provisions of the policy are relied upon in support of the company's claim that it was discharged from further liability on the policy when the "Surrender and Cancellation of Policy Contract" was executed and mailed to it:

"Upon surrender and discharge of this policy by all parties in interest not later than sixty days after default in payment of premium, the Company will pay the cash value. * * * The payment of the cash value may be deferred for not exceeding ninety days after receipt of application therefor."

This provision appears under section 3 of the policy entitled "Non-Forfeiture Provisions" which begins with the following statement:

"After three full years' premiums shall have been paid and after default in payment of any subsequent premium, the following provisions shall become operative."

The first of the following two provisions provides for participating paid-up insurance, and the second is the provision quoted above. The policy does not contain a provision permitting the insured to surrender the policy at his election and requiring the company to pay the net cash value where there has been no default in the payment of premiums. Here the policy had been in force more than six years, and all premiums due when the writing of July 7, 1932, was executed had been paid. Provision (b) of section 3 of the policy therefore has no application. The insured could not surrender the policy and require the company to pay the cash value without the consent of the company. An independent contract was necessary in which the minds of the parties met, and, until the request of the insured and beneficiary for a cancellation of the policy had been consented to by the insurer in a manner which would be binding on it, the policy remained in force.

When the company received the request for the cancellation of the policy, it mailed its check for the net cash surrender value, payable to the order of the insured, to its Louisville office, but this was not an acceptance of the insured's offer. The check was still in the possession of the insurance company. The offer was

not finally accepted until the check was mailed to the insured from the Louisville office of the company, and it was then too late.

The appellant relies upon the cases of Northwestern Mutual Life Insurance Company v. Joseph, 103 S. W. 317, 13 Ky. Law Rep. 714, 12 L. R. A. (N. S.) 439, Cooper v. West, 173 Ky. 289, 190 S. W. 1085, and cases of similar import from foreign jurisdictions, but in each of those cases the policy provided that the insured could elect to surrender the policy and receive its cash surrender value. The policy before us contains no provision providing for such an election, and, if the right of the insured to cancel the contract of insurance is not reserved by the policy, where there is no statute on the subject, he cannot surrender his policy and require the payment of the cash surrender value without the company's consent. A policy of insurance is a contract between the insurer and the insured, and, in the absence of a controlling statute, cannot be canceled except by mutual agreement unless there is some policy provision that it may be terminated at the option of one of the parties. In American Trust Company v. Life Insurance Company of Virginia, 173 N. C. 558, 92 S. E. 706, 710, the company attempted to cancel the policy, and the court said:

> "It takes two to make a contract, and, while one may cause a breach, it takes two to rescind or cancel it, unless there is some provision in the contract itself authorizing its rescission or cancellation at the option of one of the parties, which is not a feature of the policy in this case."

A parallel state of facts was presented in Murphree v. National Life & Accident Insurance Company (Miss.) 150 So. 534, 535. Murphree had carried a policy for $5,000 for five years, and the premiums were paid up to September 28, 1931. He had procured a loan on the policy in the sum of $309.52, and before the sixth annual premium was due he delivered the policy to the field agent of the company with the request that it be canceled and that he be paid the cash surrender value less the amount of the loan. The company, on September 14, 1931, entered the policy as canceled on its books and forwarded to its agent a check for $30.48, the balance of the cash surrender value after payment of the loan. The check was accompanied by a receipt to

be signed by the insured. Murphree was seriously injured in an automobile accident on September 16, 1931, and died September 22, 1931. His condition was such after the accident that the agent of the insurance company was unable to deliver the check to him and obtain his signature to the receipt. The policy contained a provision that upon its surrender to the company at its home office within the grace period the company would pay in cash not later than sixty days thereafter as its surrender value the full reserve on the policy computed on the date of default upon a specified basis.

In holding that the request of the insured to have the policy canceled since he was not in default in the payment of premiums was not an election under this provision and that the acceptance by the company of the policy for cancellation was never communicated to the insured and was not a cancellation of the policy, the Supreme Court of Mississippi said:

"There are two ways and two only in which a policy of insurance in full and unimpaired force may be legally surrendered and canceled: First, under the terms written in the policy itself; and, second, under the terms of a subsequent oral or written agreement. If under the terms of the policy, then those terms must be adhered to as written in every material particular, and shall not be changed by either party in any obligatory way in the surrender or cancellation—this for the obvious reason that, if the obligatory features of those terms be abridged or enlarged or changed in any material way, then the surrender is not under those terms, but under something subsequent to and different from them. If by a subsequent oral or written agreement, then every part of the said subsequent agreement shall have operation as to every material feature that it covers or includes, and, if the agreement is brought about by means of a proposal on one side and acceptance on the other, the acceptance must be in the exact, or substantially exact, terms of the proposal, and the acceptance must be communicated to the proposing party."

And further along it was said:

"Having determined that the attempted surrender was not made under the terms of the policy, but under a subsequent modified agreement and under-

standing that the surrender should be upon the obligation and condition of immediate payment, then it follows upon familiar principles of law, and as already stated, that the acceptance of the proposal by the insured so to surrender must be made in the exact, or substantially exact, terms of the offer, and that the fact of such acceptance must be communicated to the offerer without which the acceptance remains inoperative and incomplete. It is undisputed that the acceptance in this case was never communicated to the insured, wherefore there was no completed cancellation of the policy, and it was still in force at the date of the death of the insured.''

In the case before us the policy stipulates that the provision for its surrender by the parties in interest shall become operative after three full years' premiums shall have been paid and after default in payment of any subsequent premium. There is no provision for the surrender of the policy by the insured and receipt by him of the cash surrender value except where there has been a default in the payment of the premiums. The very clause relied upon by appellant by implication precludes surrender of the policy by the insured under other circumstances except by mutual agreement of the parties. The written request to cancel the policy and to pay to the insured the cash surrender value, signed by the insured and the beneficiary on July 7, 1932, was merely a proposal requiring acceptance by the insurer and communication of such acceptance to the insured. The acceptance was never communicated to the offerer of the proposal, and it follows the circuit court correctly adjudged that the policy was still in force at the date of the death of the insured.

The judgment is affirmed.