## Inter Southern Life Insurance Co. v. Esenbock.

(Decided Dec. 4, 1934.)

BEN SELIG WASHER, L. H. HILTON and R. W. KEENON for appellant.

ADOLPH GRAVES and WILLIAM W. MEEKS for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On March 16, 1927, the appellant, Inter Southern Life Insurance Company, issued and delivered to Munns Bros., Inc., of Lexington, Ky., a group insurance policy insuring the employees of Munns Bros. John L. Esenbock, an employee of Munns Bros., made application for

insurance under this group policy and under date of October 16, 1929, the Inter Southern issued to Esenbock its certificate for $1,000, naming as beneficiary therein, Ethel Esenbock, wife of the insured.

The employer, Munns Bros., paid the required monthly premiums under the group policy up to and including the monthly premium which became due on August 16, 1931. On this date August 16, 1931, Munns Bros. obtained a similar group policy from the Prudential Insurance Company of America for the benefit of its employees, and John L. Esenbock was initially insured under this group policy and obtained from it a certificate for $1,200, naming as beneficiary therein his wife, Ethel Esenbock. When the next monthly premium matured on the Inter Southern group policy, September 16, 1931, Munns Bros. failed to make payment on the monthly premium to this company, but deducted from Esenbock's wages his pro rata share of the monthly premium on the group policy issued to it by the Prudential Insurance Company of America, which it had obtained on August 16, 1931, as above indicated. On September 18, 1931, two days after the monthly premium became due on the Inter Southern group policy, W. I. Robbins, an employee of Munns Bros., Inc., who had charge of its bookkeeping and general office management, including looking after the correspondence, etc., wrote the Inter Southern the following letter:

"Sept. 18-31.

"Inter-Southern Life Ins. Co., Louisville, Ky.

"Gentlemen: We wish to discontinue this group policy and take this means to advise you to cancel the policy.

"Please accept our thanks for the very kind relationship that has existed during the life of this policy.

"Your very truly,

"Munns Bros., Inc.,

"W. I. Robbins."

The letter was properly addressed, stamped, and placed in the United States mail on Friday, September 25, 1931, some time about 9:30 o'clock p. m. According to the mail schedule, a letter mailed at Lexington at that time would leave for Louisville on the next morning

and arrive in Louisville about noon the same day. It was the custom of the Inter Southern to close its office on Saturdays at noon and mail arriving about that time or later was not opened until the Monday following, which, in the instant case, was September 28, 1931.

John L. Esenbock died on September 27, 1931, which was the day after the arrival of the letter in Louisville and the day preceding the opening of the letter by the Inter Southern. On Monday, September 28, 1931, Robbins wrote the appellant a letter notifying it of the death of Esenbock and asked it to send to Munns Bros. the necessary papers to file his claim. On September 30, 1931, the Inter Southern wrote a letter to Munns Bros. informing them that it had accepted their letter of September 18, 1931, as official cancellation of the group policy and advising that it could not assume any liability under the policy because of its cancellation. Robbins, responded to the above letter admitting the cancellation of the policy, but insisted that the policy carried a thirty-one-day grace period and that the death of Esenbock occurred within the period of grace and, therefore, the policy was still in force.

The Inter Southern refused payment on the policy for reasons above indicated, whereupon Ethel Esenbock, the beneficiary of the policy, instituted this suit against the Inter Southern to collect the benefits of the policy.

The Inter Southern defended on the ground that the policy had been canceled and the contract rescinded prior to the death of the insured.

It is insisted for appellee that Robbins had no authority to write the letter purporting to cancel the policy and, therefore, the policy was in force at the time of Esenbock's death. C. R. Munns, an officer and member of the firm of Munns Bros., testified that Robbins had no authority to write the letter; that he was not a member of the firm but an employee only and his duties consisted of general office work; that he had the right to write letters relating to routine business, but that "he had no authority to make or break any contracts outside with any one." Robbins testified in substace that when Munns Bros. obtained the group policy from the Prudential Insurance Company of America, he then wrote the letter mentioned above, but that he was not directed to do so by any of the officers or members of the firm of Munns Bros.

It is apparent from the evidence that when the group policy was taken out with the Prudential Insurance Company of America, Robbins assumed or took it for granted that it was a substitution for the former policy (the Inter Southern) and proceeded to write the letter upon that assumption. The writing of the letter by Robbins, of itself, would create the presumption that he had the authority to write such letter. But the evidence of C. R. Munns and Robbins completely overcomes such presumption and, consequently, there is no evidence to show that Munns Bros. authorized Robbins to write the letter or that they intended to cancel the Inter Southern policy. But conceding, arguendo, that Munns Bros. authorized the writing of this letter, yet, the policy was not canceled at the time of Esenbock's death for the very obvious reason that such letter had not been received and accepted by the Inter Southern. The undisputed evidence is that the letter was not received by the Inter Southern until the day after Esenbock's death, but was only in transit. It is the well-settled rule that before a contract can be terminated by the parties thereto, there must be an offer or declared intention to terminate it by one of the parties and such offer accepted by the other party, unless the contract expressly provides that either party may terminate it at will. We find no such provision in the policy here in question. In the case of Fidelity Mutual Life Ins. Co. v. Heltsley, 254 Ky. 453, 71 S. W. (2d) 1017, the insured proposed to surrender the policy upon payment of its cash surrender value. This application was in writing and received by the insurance company at its Philadelphia office July 12, 1932, and on July 15, 1932, it mailed to its Louisville office its check representing the cash surrender value of the policy, payable to the insured. On July 18, 1932, the Louisville office mailed to the insured at Madisonville, Ky., the check with a letter of that date, which read:

"Inclosed please find check to your order for $54.95 in full for surrender and cancellation of the above numbered policy."

The insured died July 17, the day before the check and letter were mailed from Louisville. The check was returned to the company which later issued another check for the same amount, payable to the beneficiary. The beneficiary refused to accept the check and later brought suit to recover the face amount of the policy.

One ground of defense was that the policy had been surrendered and canceled before the death of the insured. We held that the policy was not surrendered or canceled because the check had not been received by the insured before his death. And we further said, quoting from American Trust Co. v. Life Ins. Co. of Virginia, 173 N. C. 558, 92 S. E. 706, 710:

"It takes two to make a contract, and, while one may cause a breach, it takes two to rescind or cancel it, unless there is some provision in the contract itself authorizing its rescission or cancellation at the option of one of the parties, which is not a feature of the policy in this case."

See, also, to the same effect Murphree v. National Life & Acc. Ins. Co., 168 Miss. 667, 150 So. 534, 151 So. 748.

On the subject of cancellation of insurance policies, 14 R. C. L., sec. 186, page 1008, the rule is stated thus:

"As in all cases of contracts, neither party to an insurance contract can withdraw therefrom, or cancel the same, without the consent of the other."

Citing Rothschild v. American Cent. Ins. Co., 74 Mo. 41, 41 Am. Rep. 303.

The text, however, notes the exception pertaining to fire insurance policies which usually contain provisions permitting either party thereto to cancel the same on complying with certain conditions.

On the subject of surrender of an insurance policy, 14 R. C. L., sec. 196, pages 1016, 1017, it is said:

"The courts appear to be unanimous in holding that the mere physical surrender of a policy by the assured does not terminate the contract, but that the question is one of intent to be gathered from all the facts and circumstances connected with the physical act of surrender. The surrender of a policy, with a request that it be terminated, operates ipso facto as a cancellation, where the policy provides that the 'insurance may be terminated at any time at the request of the assured.' But mailing a letter inclosing policies for cancellation will effect such cancellation only when the letter is actually received by the insurer or his representative; and the policies will be binding in case of loss while the letter is in the mails."

See, also, to the same effect 32 C. J., sec. 454, page 1259.

The undisputed facts disclosed by this record, in the light of the authorities herein cited, impel us to the conclusion that the offer or attempted surrender of the policy by Munns Bros., if such offer or tender was actually made, did not effect a cancellation or surrender of the policy because the offer had not been received and accepted by the insurer previous to the death of Esenbock—it not being disputed that his death occurred within less than thirty days after the last due date for payment of premium and within the grace days of the policy.

The judgment is affirmed.

The whole court sitting.