**FRANKLIN LIFE INSURANCE COMPANY, Appellant,**

v.

**Arch C. DURHAM et al., Appellees.**

**No. 3913.**

Court of Civil Appeals of Texas.

Waco.

Oct. 26, 1961.

Rehearing Denied Nov. 16, 1961.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

Fenley & Fenley, William Drew Perkins, Lufkin, for appellees.

TIREY, Justice.

This is an appeal from a summary judgment. The action is one to recover the face amount of a life insurance policy brought by the devisees and legal representative of the beneficiary. The company defended on the ground that the insured effectively terminated the policy for surrender before his death. The court denied the motion for summary judgment filed by the company and granted the motion filed by the plaintiffs. The court held that appellees were entitled to recover the full face value of the policy of $5000 plus $600 penalty, and fixed the attorney's fees at one-third of the face of the policy, $1666.67, and decreed accordingly. The company seasonably perfected its appeal to the Beaumont court and the cause is here on transfer.

The judgment is assailed on three Points. They are to the effect that the court erred:

(1) In holding the policy was in force at the time of the insured's death, because the insured had effectively exercised his option to surrender the policy;

(2) Alternatively, in the event the court holds the policy was in force at the time of the insured's death, then, the court erred in awarding statutory penalty and attorney's fees, because appellees demanded more than would have been due under the policy;

(3) Alternatively, in the event the court holds the policy was in force at the time of the insured's death, then the court erred in failing to give appellant credit for the amount paid to the insured.

Appellees' counter-points are substantially to the effect:

(1) That the court correctly held that the policy was in force at the death of the insured, because there had been no mutual agreement to terminate the contract of insurance;

(2) That the court was correct in awarding statutory penalty and attorney's fees, because appellees sued for the face of the

policy after any liability on it had been denied by appellant;

(3) Appellees recognize that appellant as a lien holder is entitled to repayment of the amount of principal and accrued interest on the loan secured by the policy.

A statement is necessary. On November 26, 1952, Leslie Louie Biggs paid the initial premium of $159.63 on a life insurance policy with the appellant, and the policy was issued on December 10th, 1952. The policy provided for the principal sum of $2500 with a double benefit of $5000 in certain contingencies. His wife, Annetta C. Biggs, was named as primary beneficiary, and his sister, Velma W. Biggs, as first contingent beneficiary. The policy provided that the first policy year begins November 26, 1952. While the policy was in force the insured, joined by his wife, on the 30th day of January 1959, executed an instrument which stated: "Loan Agreement and Assignment of Policy." We quote the pertinent provisions of this instrument:

"Pursuant to the provisions of Policy Number 1121729 issued or assumed by The Franklin Life Insurance Company of Springfield, Illinois, on the life of Leslie Louie Biggs, (The Insured), in consideration of a loan of Full Cash Value Dollars ($————) by said Company, the receipt of which is hereby acknowledged, the undersigned hereby pledges, assigns, and transfers to said Company, its successors and assigns, said Policy and all rights and benefits thereunder, to secure the payment of said loan and the interest thereon and any other indebtedness to the Company on said Policy.

＊　＊　＊　＊　＊　＊

"And it is hereby warranted that no petition in bankruptcy, voluntary or involuntary, has been filed by or against the undersigned since the date of said Policy, and that unless otherwise stated below, neither said Policy, nor any interest therein is now in any manner pledged, transferred or assigned, except to said Company.

"Any Exception to above warranty must be here stated.

"The Full Cash Value is Requested. ＊　＊　＊."

The foregoing instrument and the policy of insurance were placed in the hands of the local agent of appellant, and was by him sent to the Home Office, and was received by the company on February 23, 1959. On February 26, 1959, the company sent the insured a check for $177.91, that sum being the cash value at that time, less interest on a loan of that amount at 5% per annum for the remainder of the policy year ending November 26, 1959, and enclosed the policy endorsed with the loan. The check was accepted and cashed by the insured. Thereafter, on March 4, 1959, the insured wrote appellant as follows: (We quote the pertinent parts)

"Recently papers were sent to you by the local agent of the Franklin Life Insurance Company requesting the complete cash value on policies listed as follows:

"Policy 1,121,729—907, 929—1,173,-311 and 907,930. I have received checks drawn by you dated February 26, 1959, for certain amounts less interest.

"In my request I plainly stated that this was not to be a loan but was to be a cash surrender of these policies. Therefore I am stopping payment from the Lufkin National Bank on your drafts against these policies and request that you send me a check for $19.09 which is the interest you had charged against these policies which was not in accordance with my request. Upon receipt of this check, I will return these policies to you."

Thereafter, on March 12, 1959, appellant wrote the insured as follows: (We quote the pertinent parts)

"To complete the cancellation of these policies, the enclosed Receipt and Release forms should be signed as indicated in the presence of a witness. These forms should then be returned, along with the policies, within two weeks. As soon as these items are received, our checks will be mailed, and all protection will stop. The amount of the checks will be equal to the amounts previously deducted from your loans.

"We here at Franklin, want to serve you, and we welcome the opportunity to furnish you with helpful information or advice about your life insurance program."

The insured died on March 16, 1959, without executing the release form, and without returning this policy for cancellation. The beneficiary died shortly after the insured died, and the beneficiary's devisees and legal representative brought this suit for the face of the policy, interest, penalty and attorney's fees. Under the Non-Forfeiture Clause of the policy, we have the following provisions pertinent here:

"1. Automatic Extended Insurance: This Policy will, without action of the Insured or payment of further premiums, be continued as non-participating paid-up term insurance, without loan values, for the principal sum insured, increased during such part of the paid-up term period as falls within the double benefit period specified on the first page hereof by an additional sum equal to the principal sum insured, for such a period reckoning from the due date of the unpaid premium as the then cash value of this Policy will purchase at the insured's then attained age at net single premium rates by the Commissioners 1941 Standard Ordinary Mortality Table with interest at the rate of 3% per annum. If this Policy is being continued as extended insurance which become effective at the end of the third or any subsequent policy year, then the Company will pay, upon legal surrender of this Policy within thirty days after the end of any policy year, a cash surrender value equal to the full reserve according to the mortality table and interest rate specified in this paragraph for the unexpired period of such paid-up term insurance.

"2. Paid-up Insurance: In lieu of the paid-up term insurance provided for in paragraph 1 above, upon the Insured's written request and legal surrender of this Policy within sixty days from the due date of the unpaid premium, the Company will issue a non-participating paid-up life policy for such amount as the then cash value of this Policy will purchase at the Insured's then attained age at net single premium rates by the Commissioners 1941 Standard Ordinary Mortality Table with interest at the rate of 3% per annum. For any paid-up life insurance which is issued under this provision at the end of the third or any subsequent policy year, the Insured may obtain a loan of an amount not greater than the reserve for such paid-up life insurance, subject to the loan provisions thereof, or may surrender such insurance within thirty days after the end of any policy year for its reserve according to the mortality table and interest rate specified in this paragraph and less any indebtedness thereon.

"3. Cash Surrender Value: In lieu of the paid-up term insurance provided for in paragraph 1 above, upon the Insured's written request and legal surrender of this Policy within sixty days from the due date of the unpaid premium, the Company will pay the cash value hereinafter specified. If this Policy shall have become paid-up by completion of all premium payments, then upon the Insured's written request and legal surrender of this

Policy within thirty days after the end of any policy year, the Company will pay the cash value hereinafter specified."

(4. Relates to Basis of Cash Value, not pertinent here.)

(5. Relates to Explanation of Table of Non-Forfeiture and Loan Value, not pertinent here.)

Under the foregoing undisputed factual situation, Did the Trial Court err in holding that the policy was in force at the time of the insured's death? We think not. Appellant contends that the policy gave the insured the exclusive option to terminate it and receive the cash surrender value; that when the insured, as he did here, elects to exercise such an option by unqualifiedly notifying the company to that effect, that the obligation of the company thereupon becomes a matured indebtedness to the insured for the amount of the cash surrender value, and any contingent liability in the event of the death of the insured thereby comes to an end; that the company had no right to reject such an unconditional notification of the exercise by the insured of such right of surrender; that the policy provisions here constitute a continuing offer on the part of the insurer, and when such offer is unconditionally accepted by the insured, the rights of the parties become fixed, and are not affected by any subsequent change such as the death of the insured before actual payment of the cash surrender value. Appellant relies on the following cases to sustain its contentions: Pequot Mfg. Corp. v. Equitable Life Assurance Society, 253 N.Y. 116, 170 N.E. 514; Lipman v. Equitable Life Assurance Society (CCA 4th) 58 F.2d 15; Mutual Life Insurance Company v. Kaiser, 193 Miss. 581, 10 So.2d 766; Mercantile Nat. Bank at Dallas v. The Franklin Life Ins. Company (CCA 5th) 248 F.2d 57; Pacific States Life Ins. Co., v. Bryce (CCA 10th) 67 F.2d 710, 91 A.L.R. 1446; Cockrill v. Southwestern Life Ins. Co., (Tex.Civ.App.1937), 103 S.W.2d 399;

Flatonia State Bank v. Southwestern Life Ins. Co., 133 Tex. 243, 127 S.W.2d 188; Lovell v. St. Louis Mutual Life Ins. Co., 111 U.S. 264, 4 S.Ct. 390, 28 L.Ed. 423; Manhattan Life Ins. Co. v. Allison, 100 Colo. 1, 64 P.2d 1265; Day v. Metropolitan Life Ins. Co., 11 Cal.App.2d 681, 54 P.2d 502; Murphree v. Nat. Life & Accident Ins. Co., 168 Miss. 667, 150 So. 534, 151 So. 748. 3 Appleman, Insurance Law and Practice, 353, Sec. 1752, p. 370, Sec. 1757. The Franklin Life Insurance Company v. Smithers, 5 Cir., 285 F.2d 875.

We have read very carefully the authorities cited by appellant, and we are of the view that none of the authorities cited by appellant is applicable to the peculiar factual situation here before us.

Going back to the request made by the insured on the 30th day of January 1959, we find that the first paragraph says:

"Pursuant to the provisions of Policy Number 1121729 issued or assumed by The Franklin Life Insurance Company of Springfield, Illinois, on the life of Leslie Louie Biggs, (The Insured), in consideration of a loan of Full Cash Value Dollars ($———) by said Company, the receipt of which is hereby acknowledged, the undersigned hereby pledges, assigns, and transfers to said Company, its successors and assigns, said Policy and all rights and benefits thereunder, to secure the payment of said loan and the interest thereon and any other indebtedness to the Company on said Policy."

Regardless of what the insured intended, the instrument definitely made an application for a loan for the full cash value. The Company so construed it, and promptly gave the insured the benefit of such loan value and made an endorsement of the loan on the policy and returned the policy together with the check to the insured. When the insured received this check and the policy endorsed with the loan, he had full notice of what the company had done,

and accepted the check, endorsed it and cashed it on March 4, 1959. In so doing he ratified the action of appellant in granting him a loan and the policy thereby became duly charged with the amount of the loan with 5% interest.

It is true that on March 4, 1959, the insured wrote the company in part: "In my request I plainly stated that this was not to be a loan, but was to be a cash surrender of these policies." That statement by the insured has no support in the record and is in irreconcilable conflict with the instrument he executed dated January 30, 1959, which we have heretofore set out. It is our view that the record is without dispute that the appellant had no notice whatever to the effect that the insured desired to cancel his policy until it received his letter of March 4, 1959. It is true that under the foregoing letter the insured stated: "I am stopping payment from the Lufkin National Bank on your drafts against these policies," and the insured did so notify the bank; however, one draft drawn by appellant on insured was paid by the Lufkin bank on March 3, 1959, and this paid the premium to March 26, 1959. It, therefore, appears to us that the insured, by actually applying for a loan and accepting the loan agreement, placed himself in such position that the company had a right to take such precautions as it deemed necessary for its protection. In so doing, it advised the insured by its letter of March 12th, "To complete cancellation under these policies, the enclosed Receipt and Release forms should be signed as indicated in the presence of a witness. These forms should be returned along with the policies in two weeks. As soon as these items are *received our checks will be mailed and all protection will stop.*" (Emphasis added.) Four days later the insured died without taking any action whatever. The insurance company, in its letter of March 12th in the last paragraph stated: "We here at Franklin want to serve you, and we welcome the opportunity to furnish you with helpful information or advice about your life insurance pro-

gram." Since the insurance company advised the insured that its protection did not stop until the foregoing papers were executed and returned to it, we are of the view that the insured had a right to rely on that statement. See Equitable Life Assurance Society of the U. S. v. Ellis, 105 Tex. 520, 147 S.W. 1152. At any rate, no one knows whether he desired to continue his policy or just what he intended to do. He had two weeks time limit in order to accept or reject the appellant's proposal. We think the foregoing factual situation distinguishes this cause from the authorities above cited on which appellant relies That leads us to say that we are of the view that the trial court correctly held that the policy was in force at the death of the insured, as there had been no mutual agreement to terminate the contract of insurance. Such was the view and the construction placed on the contract by appellant as disclosed by its letter of March 12th, which we have previously quoted.

But appellant contends that under the non-forfeiture clause of the policy, the insured's letter to it of March 4, 1959, effectively cancelled the policy. We are not in accord with this view. The non-forfeiture clause on which it relies provides in part:

"In the event of default in the payment of premiums one of the following benefits shall apply: No. 3, (in part is): Cash Surrender Value: In lieu of the paid-up term insurance provided for in parapraph 1 above, upon the insured's written request and legal surrender of this policy in 60 days of the due date of the unpaid premium, the company will pay the cash value hereinafter specified."

It is true that the insured did request cancellation in his letter of March 4, 1959, but he did not legally surrender the policy as provided for under the above provision. The insured had previously completed the loan agreement under the terms of the policy, and had accepted the benefits of

such loan, and the policy was in full force and effect at the time he made the request for cancellation. Since the insured did not legally surrender the policy, as provided for under the above instructions, and did not do so after he was requested to by the company, it is our view that the non-forfeiture provision does not apply here. We are of the further view that the insured had the right under this undisputed factual situation to change his mind about the cancellation of his policy, and this he could do by failing and refusing to execute the papers required by the company and by refusing to return the policy for cancellation, and under the record that is exactly what he did. The letter of March 12th from the company to the insured fully advised the insured of the company's attitude toward him, and if he changed his mind and decided to keep the policy under the loan agreement as theretofore made, no notice of such decision to do so to the company was required and the company's position was not changed and it suffered no detriment by his failure to so notify it.

■ Both appellant and appellees assert that they have been unable to find any Texas cases dealing directly with the exact factual situation here before us, and we have found none. Appellant and appellees both cite and discuss two cases that are directly in point, they are, namely: Landy v. New York Life Ins. Company, 170 Misc. 942, 11 N.Y.S.2d 622, and Fidelity Mutual Life Insurance Company v. Heltsley, 254 Ky. 453, 71 S.W.2d 1017. In the Landy case the insurance contract was substantially the same contract as we have in the case at bar, and in that case the court held that there could be no cancellation because there was no default in the premium payment. Under the undisputed factual situation which we have here detailed, we do not believe we have to go that far to sustain the trial court's judgment.

■ We are of the further view that the court was correct in awarding statutory penalty and attorney's fees, because appellant denied any liability. It is true that the plaintiffs made demand for more than what was due under the policy, because the demand did not take into account the loan outstanding against the policy, but this seems to have been overlooked by both plaintiffs and defendant. The question of penalty and attorney's fees is controlled by the pronouncement made in Nat. Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S.W. 1040, (Opinion adopted, Com. of Appls.,). See also Mercury Life Ins. Co. v. Mata, Tex.Civ.App., 310 S.W.2d 130, (Writ ref.).

■■ It is true that the trial court in its judgment failed to credit the amount due on the policy as evidenced by the loan agreement between appellant and the insured, but as we have above stated, this matter seems to have escaped the attention of the appellant and appellees, and was not called to the attention of the trial court. Appellees in their brief say that they "here now respectfully tendering a remittitur, in accordance with Rule 439 TRCP., in the amount of $199.25, which represents the amount of principal and interest due on the loan made to the insured and its pro-rata amount of the statutory penalty." This remittitur is granted and the judgment entered by the trial court is credited with the amount of $199.25. Accordingly, the judgment is credited with $199.25, and as so credited is reformed and affirmed. We have considered each of appellant's points and each is overruled. We are of the further view that under the factual situation here good cause exists to tax all costs of appeal against appellant. See Rule 448 Texas Rules of Civil Procedure, and Lone Star Gas Company v. Childress, Tex.Civ. App., 187 S.W.2d 936, and cases there cited.

Reformed and affirmed.