246 So.2d 664

**AMERICAN LIBERTY INSURANCE COMPANY, a Corporation, etc.**

v.

**Leroy E. PACK and Ruth E. Pack.**

**6 Div. 48.**

Court of Civil Appeals of Alabama.

Aug. 19, 1970.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellant.

**598.**

A. Vincent Brown, Bessemer, for appellees.

## ON REHEARING

BRADLEY, Judge.

On rehearing, the original opinion in this case is withdrawn and the following is substituted therefor as the opinion of the Court.

This action arose as a result of a complaint being filed by an insured against the insurer on a fire insurance policy due to a loss from a fire damaged residence.

Appellant-insurer demurred to the complaint filed by the insured, and the demurrer was overruled. Thereafter a plea in short by consent was filed and trial was had before the court sitting without a jury on the issues presented by the pleadings. Judgment was rendered for the appellee-insured in the amount of $6,624.

The evidence revealed that appellees purchased some property, including a house, from a Mrs. Nell Griffin and gave her a mortgage thereon for the balance due.

On February 7, 1967 Mrs. Griffin endorsed to the appellees a fire insurance policy, the face amount of which was $6,-000. The policy covered the house which she had previously sold to the appellees.

Subsequent to this endorsement, appellees transferred another policy of insurance with a different company from a house they had previously owned to the house in question. The insurer on this policy was Farm Bureau Insurance Company.

The agent for the fire insurance policy in question was the Paden Agency of Bessemer, Alabama.

Mr. Porter of the Paden Agency testified that when he informed appellee, Leroy

Pack, that the policy was in existence and the premium of $39 was due, he was told by Mr. Pack to cancel the policy.

The testimony reflects that Mr. Porter told Mr. Pack that the policy would have to be brought to the agency or a lost policy receipt signed before the policy could be cancelled.

The cancellation clause in the fire policy in question provides as follows:

"This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time."

Mr. Porter of the Paden Agency also testified that the premiums due on the policy had been paid to the appellant by the agency and that all premiums due on appellees' insurance had been paid, although he could not state positively that the premium on the policy in question had been kept current by appellees.

The Paden Agency handled other insurance business for the appellees, and would notify appellees when it was necessary for him to pay it for premiums then due. It was further stated that this was common business practice for insurance agencies such as the Paden Agency.

On November 13, 1967 appellees' house was destroyed by fire. Farm Bureau Insurance Company paid appellees the face amount of its policy and then appellees sought to collect from appellant on the $6,000 fire insurance policy they had with appellant.

Appellant refused to pay the policy amount on the ground that the policy had been cancelled by the insured prior to the loss of the house by fire. This action against appellant resulted from the refusal to pay the amount allegedly due under the policy.

Appellant made eight assignments of error, five of which were concerned with the question of whether or not the policy with appellant had been effectively and unequivocally cancelled prior to the loss of the house by fire.

Under the policy provision in question, appellant contends that all an *insured* has to do to cancel his policy is to make it known to the company that he wishes to cancel the policy.

The appellant says the language of this particular clause of the policy in question is simple and clear; the policy shall be cancelled at the request of the insured. And, appellant says, that if the insured, after cancelling the policy, wishes a return of the unearned premium, the policy must be surrendered to the company.

The testimony in the case at bar is without dispute that the Paden Agency was a general agent for the appellant and had the authority not only to sell and issue fire insurance policies for appellant, but also to cancel such policies of insurance.

The Supreme Court in National Life Ins. Co. of United States of America v. Reedy, 217 Ala. 114, 115 So. 8, said:

"A general agent, * * * has the authority to bind the company by his acts done within the ordinary scope and limits of such insurance business and his agency, * * *."

Appellees seem to agree with appellant's interpretation of the cancellation clause of the policy in question, but say that the acts and statements of the company, acting by and through its general agent, the Paden Agency, modified the cancellation procedure so that appellees never did cancel the policy issued by appellant.

To support his argument, appellant cites us to the case of Society of the Roman Catholic Church of the Diocese of Lafayette v. Northwestern Mutual Ins. Co., La. App., 204 So.2d 116.

The factual situation in the cited case is very much like the one at bar; even though there are some differences.

In the Louisiana case the wording of the cancellation clause is identical to the one at bar, but there was also in effect in Louisiana, a statute spelling out that a fire policy issued in Louisiana must contain the very language set out in the cancellation clause of the policy in the cited case.

The facts in the cited case show that the insured requested, by telephone call to the agent of the insurer, that certain policies be cancelled by July 1 of that year, and the agent acknowledged the desire of the insured to cancel, and said a return of the policies at that time would not be necessary.

Over a period of several months the insured received premium notices on the policies that supposedly had been cancelled, and the insured would call and say that the policies had been cancelled and not to send him premium notices. The agent told the insured to send in the policies; however, the policies were not surrendered until October 14, 1964, at which time the policies were cancelled by the agent. But the loss for which claim was made occurred between July 1, 1964 and October 14, 1964.

The Louisiana Court said:

"Thus it is clear that to effect a cancellation of an insurance policy of the type under consideration in the instant matter all that is required is notice on the part of the insured directed to the company and/or agent evidencing a clear and unequivocal desire to cancel said policy. The return of the policy itself is a prerequisite only to a refund of the excess of the premium paid."

In the case at bar, the evidence shows that Mr. Pack, on more than one occasion, told Mr. Porter or Mr. Holt of the Paden Agency that he wanted the policy in question cancelled, but was told each time that before the policy could be cancelled, it would have to be surrendered, or a lost policy receipt signed. In fact, Mr. Porter testified that a person holding a policy could not "just walk in off the street and arbitrarily cancel his policy."

This court is convinced, after carefully reading the testimony presented in this case, that Mr. Porter and Mr. Holt of the Paden Agency were convinced in their own minds that the policy in question could not be cancelled except by one of the two methods discussed above; and we are also convinced that the statements made by Mr. Porter and Mr. Holt to the insured, Pack, made him believe that the only way to cancel his fire policy was by invoking one of the two methods mentioned above.

The testimony is also undisputed that the insured, Pack, never cancelled his policy by either of the methods prescribed by the Paden Agency, the general agent for appellant.

In the case of Murphree v. National Life & Accident Ins. Co., 168 Miss. 667, 150 So. 534, the Mississippi Supreme Court, in a case somewhat similar to the case at bar, said that there are two ways to cancel an insurance policy: (1) by the terms set out in the policy, and (2) by the terms of a subsequent oral or written agreement.

The Supreme Court of Mississippi held, in the cited case, that there had been an attempt to cancel the insurance policy by terms which were made and agreed to subsequent to the terms set out in the policy, but there was no consummation of the cancellation effort; i. e., the insurer did not accept the conditions of the new agreement and, as a consequence, there was no cancellation of the policy.

In the case at bar, there was no new and subsequent agreement made between insured and insurer creating a new cancellation procedure different from that contained in the policy, although an effort, albeit a mistaken effort, was made by insurer's general agent to change the cancellation procedure.

We therefore hold, as did the Louisiana Appeals Court in Society of the Roman Catholic Church of the Diocese of Lafayette v. Northwestern Mutual Ins. Co., supra, that when the insured told the general agent of the insurer, the Paden Agency, to cancel the policy, it was cancelled as of that moment, notwithstanding the statements made by the representatives of the Agency at that time. The terms of the policy in question required this cancellation procedure.

We would also point out that Title 28, Section 75, Code of Alabama 1940, as Recompiled 1958, provides that no insurance company or any agent thereof shall make any contract of insurance or agreement different from the policy of insurance originally issued.

We do not deem this provision to be a prohibition against altering or changing the terms of the policy of insurance relating to cancellation thereof so long as the altering or changing of the terms of the policy is done by mutual agreement; and there was no mutual assent to a change in the cancellation procedure of the policy.

Hence, we are of the opinion that the trial court erred in holding that the insurance policy in question had not been effectively cancelled prior to the loss suffered by the insured.

The other three assignments of error, assignments six, seven and eight, question the ruling of the trial court on questions which were asked, and to which objection was made, and the introduction into evidence of an exhibit.

One question was asked of appellee, Pack, and the other question was asked of Mr. Porter, and both concerned the method prescribed by Mr. Porter to Mr. Pack for cancellation of the policy.

The answers sought by the questions constituted relevant testimony in the case and were admissible, and the trial court did not err by permitting the answers to be made.

The introduction into evidence of Exhibit #3 by appellees over the objection of appellant did not constitute error.

Exhibit #3 was a copy of the "Title Endorsement" executed by Mrs. Griffin to the Packs and approved by the Paden Agency, general agents for the appellant.

The absence of the original was explained by Mr. Porter when he testified that the original was not in the agency's possession because he had sent it either to the mortgagee, Mrs. Griffin, or the Packs; his best recollection was that he had sent it to the appellees.

Because of the error committed by the trial court as hereinabove pointed out, the cause is

Reversed and remanded.