## No. 13,680.

MANHATTAN LIFE INSURANCE COMPANY *v*. ALLISON.

(64 P. [2d] 1265)

Decided May 25, 1936. On rehearing original opinion adhered to
February 15, 1937.

1

Messrs. BENEDICT & PHELPS, for plaintiff in error.

Mr. LOWELL WHITE, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE Manhattan Life Insurance Company, plaintiff in error, prosecutes this writ of error to reverse a judgment procured against it by Laura C. Allison, defendant in error, on a policy of insurance issued by the company on the life of Lewis C. Allison in which she was named as beneficiary. Reference will herein be made to the parties as the company and insured.

The policy was dated July 28, 1925, with premiums due quarterly on the 28th day of October, January, April and July. These were regularly paid, the last, April 28, 1933, kept the policy in full force and effect to July 28, 1933. The policy contained the following provision, upon the construction of which the final disposition of this case depends: "After this policy shall have been in force two full years, the insured, within three months after default in payment of any premium, may elect—(A) To surrender this policy for its cash value upon proper release signed by the insured. * * *."

Prior to July 25, 1933, the insured wrote the following undated letter:

"Boulder, Colo.
"Jamestown Star R

"Manhattan Life,
"Denver.
"Gentlemen:

"Please cash my 2 policies in on July 28, 1933, and send me the balance cash value to the above address.

"Yours truly,
"Lewis C. Allison."

This letter was received at the Denver office July 25, 1933, which office is maintained under a contract between the company and one Culbreath, who is named as agent in the certificate of authority issued to the company under the provisions of, and as required by, section 2491, C. L. 1921. This statute provides that the agency is for the transaction of such business as the company is authorized to transact in the state. It is stipulated that Culbreath is furnished by the company with the required forms for request for cash surrender value of policies, furnishes same to policyholders, receives them from policyholders when signed by them, and forwards same to the home office of the company where action is taken and checks written. July 25, in reply to the above letter, the cashier in Culbreath's office by letter acknowledged its receipt and enclosed blank form of request asking

4

insured to sign and return it together with the policy. July 28, insured enclosed the signed request with a letter to the company in which he stated that the policy was in the Denver office of the company. July 29 the cashier advised insured that the policy had been mailed to him on May 29. August 2, insured wrote to Culbreath as follows:

"Ward Star Route,
"Boulder, Colo.,
"Aug. 2nd, 1933.

"Mr. John A. Culbreath,
"Denver, Colo.
"Dear Sir:
"Inclosed please find insurance policies to be cashed in as per instructions.

"Very truly,
"Lewis C. Allison."

This letter containing the policies was received at the Denver office in the first mail on the morning of August 3, and the policies and request were on that day mailed to the home office of the company. The insured died about one o'clock p. m., August 3. August 4, attorneys at Boulder representing beneficiary, wrote to the Manhattan Life Insurance Company, California building, Denver, Colorado, asking for forms for proof of death and a return of the policies, stating that deceased had mailed the policies "with probable intent of having them cancelled * * * but that effect had not been given to this intention and that your company had not accepted the proposal." The policies were not returned, and the company in due course sent a check to the beneficiary for the cash surrender value, which she refused to accept, thereafter instituting this action for full recovery upon the policies.

The case was submitted to the court upon an agreed statement of facts, much of which has been hereinbefore set out. The following significant statement also appears in the agreed statement: "In the payment of cash sur-

render value of its policies, the defendant requires only that it be furnished with the written request of the policyholder upon the form of Exhibit 5, together with the surrender of the policy. * * * No other form or document was or is required by defendant in this or any other case.''

 Counsel for the beneficiary contends, and the trial court held, that before the election became complete under the contract as a condition precedent, it was necessary for the insured to sign a proper release, and that no such release was signed. This seems to be inconsistent with the excerpt from the agreed statement of facts as above quoted, which is to the effect that no more was required by the company than was done by the insured, as the facts disclose. Culbreath, it is agreed, was the duly authorized agent of the company to conduct such business as it is authorized to transact in the state. Receiving policies from policyholders, when surrendered for cash value, is a part of the ordinary and usual business of the company. This necessitates local agents or representatives, both as a convenience to policyholders, and to expedite the company's business, and when it provided Culbreath with forms for transactions of this particular nature, it surely cannot be heard to say that he was not its agent, to receive for it, policies for such purposes. The insured certainly expected to bind the company by his transaction with the agent as herein related, and this he undoubtedly could do. He set his election under the policy in motion when he addressed a letter to the company advising that he elected to cash his policies as of a certain date, and upon request, he parted with possession of the policies, with the full understanding that in doing so, he was surrendering them for the amount of cash the company had contracted to pay. When this was done with an agent of the company, through whom he could bind it, he no longer held a policy of insurance on his life; he had completed an election to close a contract to receive a fixed amount of cash, which

6

the company had no legal right to reject, since it was under an absolute obligation to pay. Whether or not insured could have revoked his election we need not decide, the fact being that he made no attempt to do so. This being true, certainly neither his beneficiary nor his heirs could successfully assert such a revocation. He had paid the company for the irrevocable right to take cash under certain conditions and after an agreed and specified time. Had the company refused to pay, he could have successfully forced a compliance with the terms of its contract in an appropriate legal action.

The contention of counsel for defendant in error that the election to take the cash surrender value "must be after default," is without merit. A cash surrender value is guaranteed and fixed for any given period or date after the policy has been in force two full years, and that time having elapsed the insured was entitled to the benefits of this provision at any time he should elect, except when the payment of any premium has been in default longer than three months. To say that insured must wait until a premium was in default before making an election, is not within the meaning of the policy provision. Counsel also contends that to effect a surrender of the policy and an election to take the cash value thereof, a release signed by insured is a condition precedent. This is a detail that the company may require, or waive, at the time of actual payment of the cash, after request by insured and surrender of his policy. Besides, the contention is contrary to counsel's stipulation that the only requirement was "That in the payment of cash surrender value of its policies, the defendant requires only that it be furnished with the written request of the policyholder upon the form of Exhibit 5, together with the surrender of the policy."

The action of the insured in the case before us, changed the liability of the company from a contingency to a certainty, and it does not lie with the company, nor

the beneficiary, to alter the rights vested and fixed thereby.

Judgment reversed and cause remanded with directions to dismiss the complaint.

MR. JUSTICE HILLIARD, MR. JUSTICE YOUNG and MR. JUSTICE BAKKE dissent.