53 So.2d 556

**FENNELL v. JOHN HANCOCK MUT. LIFE INS. CO.**

6 Div. 160.

Supreme Court of Alabama.

June 14, 1951.

Pritchard & McCall and Winston B. McCall, Birmingham, for appellant.

Cabaniss & Johnston, L. D. Gardner, Jr., and E. T. Brown, Jr., Birmingham, for appellee.

SIMPSON, Justice.

Appellant sued appellee upon a life insurance policy insuring the life of John Allison Fennell, Jr., her intestate, the policy having been made payable to his estate. The court directed a verdict for the defendant and the plaintiff has appealed.

The facts are: Defendant issued a policy of life insurance on the life of decedent January 25, 1935, and the insured died January 25, 1948. However, on January 17, 1948, insured went to the office of the company's general agents in Birmingham and signed an election to surrender the policy for its cash value, the instrument of election to surrender providing:

"The undersigned, as the holder of Policy No. 2586968 issued by the John Hancock Mutual Life Insurance Company, on the life of John Allison Fennell hereby elects to surrender said policy for its cash surrender value as provided by its terms, and hereby requests that said value be paid, and in consideration of such payment all rights and claim under said policy are hereby released and said policy is surrendered to said Company, and said Company is authorized and directed to make payment of all amounts due thereunder to John Allison Fennell.

"This election shall not be effective until this instrument is received by the said Company at its Home Office in Boston, Massachusetts, and when so received, the Company's liability under the policy, except for the amount of its cash surrender value, shall cease and determine." (This last quoted paragraph, though apparently miscopied in the record, seems to be conceded in briefs of counsel to be correct.)

The insured then left the policy with the said agents, who on the same day, January 17, forwarded it, together with the said instrument of election, to the home office of the company in Boston, Massachusetts, where the same was received January 19, and on January 22, pursuant to said election, the policy was endorsed "Surrendered Date 1/22/48." On the said date last named, January 22, the home office of the company issued check payable to the insured for the calculated cash value of the policy and sent the check, with two policy loan assignments previously executed by the insured to its Birmingham agents for delivery to the insured. These papers were received in Birmingham by the company's agents January 23. In the interim between January 17 and 23, the insured had instructed the company's Birmingham agents by telephone to mail the check for the cash surrender value when it arrived from the home office to him, care of the Post Office in Ensley, and when the check was so received by the Birmingham agents it, together with the cancelled policy loan agreements, was forwarded on January 23 by United States mail, postage prepaid, to John Allison Fennell, in accordance with his instructions, care of the Ensley Post Office. As stated, insured died thereafter on January 25. On February 2 the plain-

tiff received the envelope containing the check, but refused to accept it and filed suit March 8.

The following non-forfeiture provisions of the policy are brought under review for construction in connection with the afore-stated facts:

"After two full annual premiums have been paid on this policy, the holder hereof, *within thirty-one days after default in the payment of a subsequent premium,* may elect, by a writing filed with the Company at its Home Office, any one of the following options; but the Company may defer the payment of any cash value for not exceed-ing ninety days from the date of the appli-cation therefor.

"A. Cash Surrender Value.—To sur-render the policy and, with the written as-sent of the person to whom it is made pay-able, receive its value in cash.

\*      \*      \*      \*      \*      \*

"The cash surrender value will be the re-serve on the policy and any outstanding additions, at the date of default in payment of premiums, less a surrender charge of two per cent of the face amount of the poli-cy at the end of the second year, one per cent of the face amount of the policy at the end of the third year, one-half of one per cent of the face amount of the policy at the end of the fourth year, and the surrender value for subsequent years will be the full reserve at the nearest even dollar per thou-sand dollars of insurance, less any indebted-ness to the Company hereon."

The italicized phrase, "after default" etc., above has presented the dispute. The pre-miums had been paid on the policy to Jan-uary 28, 1948, and the appellant argues that because the policy was not in default in the payment of premiums, the election to sur-render the policy for cash under option A above set out was *not an exercise of the option* as provided by the terms of the poli-cy, but at most was merely an offer for a settlement by mutual agreement, which offer was not accepted by the company prior to insured's death.

After a careful study of the author-ities, we are bound to hold that construction of the policy to be unsound. The insured could elect, as he did, to surrender his policy for cash under option A quoted above prior to any default in payment of premium, provided at least two annual pre-miums had been paid, as was the case. Manhattan Life Ins. Co. v. Allison, 100 Colo. 1, 64 P.2d 1265; Day v. Metropolitan Life Ins. Co., 11 Cal.App.2d 681, 54 P.2d 502; 3 Appleman, Insurance Law and Practice, p. 353, § 1752.

The clause, "within thirty-one days after default in the payment of a subsequent pre-mium," should not be construed as pre-cedent to the right to elect to settle under option A, but merely a limitation within which time the insured must make an elec-tion after default in the payment of pre-mium. The Manhattan case supra, is much similar, having contained the following policy provision: "After this policy shall have been in force two full years, the in-sured, within three months after default in payment of any premium, may elect— (A) To surrender this policy for its cash value upon proper release signed by the insured. \* \* \*" 64 P.2d 1265.

The insured, as was done in the instant case, undertook to surrender the policy for its cash value prior to the time there was a default in the payment of premium, but died before receiving the cash. The Su-preme Court of Colorado, in holding that the election was within the terms of the pol-icy, although the policy was not in default, said: "The contention of counsel for de-fendant in error that the election to take the cash surrender value 'must be after default' is without merit. A cash surrender value is guaranteed and fixed for any given period or date after the policy has been in force two full years, and that time having elapsed the insured was entitled to the benefits of this provision at any time he should elect, except when the payment of any premium has been in default longer than three months. To say that insured must wait until a premium was in default, before mak-ing an election, is not within the meaning of the policy provision. \* \* \*" 64 P.2d 1266–1267.

The Metropolitan case, supra, is likewise sustentive. The policy contained the pro-vision "that after the premiums for two

full years had been paid, the insured should be entitled, upon written request and surrender of the policies within three months after the due date of any premium in default, to exercise one of three options: Cash surrender value," etc. In construing the clause and holding that an election could also be made prior to default, the court observed: " * * * the policies do not require the insured to wait until the premiums are in default before he can exercise the option. The three months' period mentioned in the policies relates to the time of presentation of the policies for surrender or indorsement. But this period is merely a limit within which the policies must be returned for that purpose. There is nothing in the language which supports the claim that either the written request or the presentation of the policies may not be made before default, or made in contemplation of default to become effective when the default occurs. * ' * *" 54 P.2d 504.

Mr. Appleman notes in his work that there is a diversity of view, but that the view here entertained is "the better rule." P. 553, § 1752.

The cases cited by appellant to sustain the contrary view, Landy v. New York Life Ins. Co., 170 Misc. 942, 11 N.Y.S.2d 622; Fidelity Mutual Life Ins. Co. v. Heltsley, 254 Ky. 453, 71 S.W.2d 1017; Murphree v. National Life & Accident Ins. Co., 168 Miss. 667, 150 So. 534, 151 So. 748, have had our considerate study. The policy provisions in those cases are not like the provision under instant consideration and, though unnecessary to burden this opinion by undertaking to rationalize a distinction, we will observe that we are not willing to accept them as authoritative to control a different conclusion from that here attained.

■ Moreover, we think our own case of State Life Ins. Co. v. Finney, 216 Ala. 562, 114 So. 132, is also conclusive of the question, even if the policy should be construed as necessitating a default in the payment of premiums before there could be an election to surrender for cash value. This for the reason that the requirement (if so construed) that there must be a default before electing to exercise the option would be a policy provision favorable to the company which the company might and did waive, the policy having been surrendered and the check in payment delivered in accordance with insured's instructions prior to his death. In any view, then, the result would be the same. Heltsley's case, supra.

We quite agree with learned counsel, as so ably argued in brief for appellant, that the exigencies resulting here are most unfortunate, but we find ourselves unable to escape the conclusion reached.

Affirmed.

LIVINGSTON, C. J., and BROWN and FOSTER, JJ., concur.