KATZ, ETC., ET AL. *v.* THE PRATT STREET REALTY COMPANY, ET AL.

[No. 193, September Term, 1969.]

*Decided March 3, 1970.*

104

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Nathan Patz* for appellants.

*John J. Ghingher, Jr.,* with whom was *Leslie J. Polt* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

The appellants, members of the Katz family (the Katzes) were the owners of 45.44% of the common stock of The Pratt Street Realty Company (The Pratt Street Company), which owned 604-618 Portland Street, Baltimore, and of 29.26% of the common stock of Joseph M. Zamoiski Company (The Zamoiski Company), which owned 212-228 South Greene Street and 601-615 West Pratt Street, Baltimore. The appellees, members of the Zamoiski family (the Zamoiskis), were the owners of 54.56% of the common stock of The Pratt Street Company and 42.28% of the common stock of The Zamoiski Company. There came a time when the Katzes and the Zamoiskis attempted, through their respective counsel, to enter into an agreement intended to facilitate the dissolution of The Pratt Street Company. It is a dispute over the proper interpretation of the agreement which has given rise to this appeal.

We set out the pertinent parts of the "Memorandum of Understanding" (the Memorandum) between counsel for the Katzes and counsel for the Zamoiskis:

> "This Memorandum of Understanding, bearing date of 11th May, 1967, is made between Weinberg and Green, Attorneys authorized to act in behalf of Calman J. Zamoiski, Jr., and other members of the Zamoiski Family, on the one hand, and Nathan Patz, Attorney authorized to act in behalf of Joseph J. Katz and other members of the Katz Family, on the other hand.
>
> "1. They will jointly submit the attached letter to Walter D. Pinkard, Realtor, requesting him to certify by written determination to said

named Attorneys jointly, the present fair market value of (a) 604-618 Portland Street, Baltimore, owned by The Pratt Street Realty Company, and (b) 212-228 South Greene Street, Baltimore, owned by The Jos. M. Zamoiski Co., and (c) 601-615 West Pratt Street, Baltimore, owned by The Jos. M. Zamoiski Co., and to further so determine, in writing, the reasonable and fair allocation of the total proceeds of sale of the combined (above) properties, as between the two owners, in the event that the property is sold in one transaction by combining said parcels—if a different division of such sales proceeds, other than the values to be determined by Mr. Pinkard in respect of (a), (b), and (c) above is more reasonable and fair to the respective owners.

\* \* \*

"3.a. It is agreed between the Zamoiski Family and the Katz Family that a sale to parties or interests other than themselves or those related to them, except as herein specifically otherwise provided with respect to the prior options to the Families, may be made at a price equal to or in excess of the price so determined and certified by Mr. Pinkard. It is agreed that all stockholders of both corporate property owners will vote in favor of such a sale to any such third party who or which offers a price for parcel (a) or parcels (b) and (c) equal to or exceeding the prices determined by Mr. Pinkard.

"b. It is further now agreed that within fifteen (15) days after the receipt by counsel, as above provided, of Mr. Pinkard's certification of value, the Katz Family shall have an option to purchase the Portland Street property and/or the combined parcels (b) and (c) at the prices therefor so certified by Mr. Pinkard; and if such option be not exercised in writing within

that period of time, then the Zamoiski Family shall next have for the following fifteen (15) day-period an option to purchase those properties at the same prices, and if such option be not exercised in writing within that period of time, no further options shall be in effect as regards the properties.

"c. In the event of any such exercise of any such option, settlement shall be made of the property or properties so involved in such option exercise within sixty days of the date of the exercise of such option, by payment of the certified price in cash, at the time fixed for settlement at which time a deed, with special warranty, further assurance and against encumbrances clauses shall be executed and delivered, on the form presently employed by the Daily Record Company for Baltimore City properties, with all transfer and documentary stamps being divided equally between the Seller and such Buyer, title to be good and merchantable and in the same condition as at present, free of liens and encumbrances, except the existing leases, and excepting for the existing and recorded easement in favor of the Portland Street property with respect to the sidetrack of the B & O Railroad, with rent, water rent, taxes and all other public charges, on an annual basis against the premises, to be apportioned as of date of settlement, as of which date possession shall be given subject to presently existing leases as aforesaid if the same shall still be in effect.

\* \* \*

"5. In the event of negotiations, condemnation or other action with respect to sale of the properties, to any third party including any government or governmental agency, it shall be recognized that Weinberg and Green as counsel for the corporate property owners shall afford to

Nathan Patz every opportunity to represent effectively the interests of the Katz Family as substantial minority stockholders of both corporations.

\* \* \*

"7. The Pratt Street Realty Company has filed with the Internal Revenue Service, following its adoption by that Company, of a plan of liquidation. ·The procedure provided by this Memorandum is intended to enable that Company to complete its liquidation within the period required by such plan. It is agreed that, promptly after the execution of this Memorandum, The Pratt Street Realty Company shall distribute, by way of partial liquidation distribution, to its stockholders in the proportion of their respective stockholdings in said corporation, the gross collection received as a result of the fire loss in 1966 at the Portland Street location. It is further agreed that in the event of a sale of the Portland Street property, in accordance with the terms of this Memorandum, is not completed by August 31, 1967, either alone or in conjunction with the Greene Street property, then as another step in the liquidation proceedings of The Pratt Street Realty Company, the Portland Street property will be distributed in kind to its stockholders as tenants in common in the same proportion as their respective stockholdings in said Company, by a deed of conveyance from said Corporation to said stockholders, the cost of recording and preparation of which shall be borne by said Corporation. Such conveyance to be made within fifteen (15) days after August 31, 1967, in such event.

"As Witness the execution of this Memorandum of Understanding on the day and year first hereinabove written, by the above named au-

thorized Attorneys acting for their disclosed principals and clients, aforementioned.

MILTON S. SCHILLER
NATHAN PATZ"

One of the curious things about the Memorandum is that the members of the Katz Family, other than Joseph J. Katz and the members of the Zamoiski Family, other than Calman J. Zamoiski, Jr., are not identified. We can only assume that their identity and the interests which they held were well known to each other and to the two corporations.

On the day that the Memorandum was signed, counsel for the Katzes and the Zamoiskis wrote to Mr. Pinkard:

"The undersigned are counsel for stockholders of The Pratt Street Realty Company and The Jos. M. Zamoiski Co., the owners of three parcels of ground and improvements located in Block 676 of Baltimore City. The parcel which is owned by The Pratt Street Realty Company (Parcel A), is known as 604-618 Portland Street; the other two parcels which are owned by The Jos. M. Zamoiski Co. are 212-228 South Greene Street (Parcel B) and 601-615 West Pratt Street (Parcel C).

"We ask you to inspect and appraise these three parcels and to certify to us jointly in writing as follows:

"1. The fair market value of Parcel A, of Parcel B and of Parcel C considered as separate parcels.

"2. The fair market value of the parcel which results from combining Parcel A and Parcel B.

"3. The fair market value which results from combining Parcel B and Parcel C.

"4. The fair market value which results from combining Parcel A, Parcel B and Parcel C as one combined parcel. In this connection, if the

combined value is different from the sum of the separate values, please certify the proper allocation of that whole value as among the parcels."

On 17 August 1967, Mr. Walter D. Pinkard, the appraiser designated in the Memorandum, returned his report, which appraised the properties as follows:

|  | Separate Value | Combined Value |
|---|---|---|
| The Pratt Street Company Property | $ 35,000 | $ 85,400 |
| The Zamoiski Company Property | 103,924 [1] | 150,392 [1] |
|  | $138,924 | $235,792 |

On 30 August 1967, Mr. Nathan Patz, as counsel for the Katzes, wrote the following letter:

"In behalf of Joseph J. Katz and other members of the Katz Family, and pursuant to the Memorandum of Understanding of May 11, 1967 between Weinberg and Green, Attorneys, for certain interests therein referred to, on the one hand, and Nathan Patz, Attorney, for the other interests therein referred to, on the other hand, this written notice is given within less than fifteen (15) days after the receipt of the appraisal report from Walter D. Pinkard, Realtor that the Katz interests exercise hereby, separately and independently, the option to purchase the Portland Street property, in fee simple, with the Railroad Side Track Agreement pertaining thereto, for the sum of money certified in the Walter D. Pinkard appraisal or certification of value thereof, viz.: $35,000.00.

"Consummation of this sale will be completed subject to title verification and the absence of

1. By letter dated 31 August, Mr. Pinkard reduced these appraisals to reflect the existence of ground rents, which he valued at $7,169.00, on the Zamoiski properties.

other liens or encumbrances, except as noted in said appraisal aforementioned, within the time provided by paragraph 3.b. of the aforementioned Memorandum of Understanding.

"It is noted that the fifteen (15) days period permitted by said Instrument does not expire until the close of September 1, 1967 and until then is still open to other possible option exercises by the Katz Family interests referred to with respect to other properties appraised by the above named Realtor.

"This notice is being delivered by hand today and is countersigned, in addition to the signature of counsel for the Katz interests, by Ernestine K. Feldman, individually, and as custodian for her children — stockholders in said Pratt Street Realty Company, and by Joseph J. Katz, individually and as custodian for his children— stockholders in said Pratt Street Realty Company."

and a day later, on 31 August 1967, wrote a second letter:

"In behalf of Joseph J. Katz and other members of the Katz Family, and pursuant to the Memorandum of Understanding of May 11, 1967 between Weinberg and Green, Attorneys, for certain interests therein referred to, on the one hand, and Nathan Patz, Attorney, for the other interests therein referred to, on the other hand, this written notice is given within less than fifteen (15) days after the receipt of the appraisal report from Walter D. Pinkard Realtor, that the Katz interests exercise hereby, separately and independently, the option to purchase the properties numbered 613-15 West Pratt Street, subject to an irredeemable ground rent of $276.00 and 212-28 South Greene Street,

in fee, except that No. 212 is subject to an irredeemable ground rent of $90.00 and No. 228 is subject to an irredeemable ground rent of $100.00 and 601-11 West Pratt Street, in fee simple, all subject to the existing tenants' outstanding leases, and subject to the railroad side track agreement now in existence.

"It is to be noted that through a clerical omission the certification of value of the above properties of Walter D. Pinkard, Realtor, treated all of the properties in the group numbered 212-28 South Greene Street, as being in fee simple, when it is understood that two of those numbered properties are subject to the above mentioned ground rents of $90.00 and $100.00 (and it is understood that the values for those numbered properties so certified by Realtor Pinkard are being reduced by a correction supplement to be issued by Mr. Pinkard as a result of the fact that those two numbered properties on Greene Street are not fee simple, as his certification assumed, but are subject to such ground rents).

"The prices so certified by Mr. Pinkard which become the option purchase prices hereunder are, $23,954.00 (as to 613-15 West Pratt Street) and $42,210.00 (as to 212-28 South Greene Street, subject to the reduction referred to above on account of the existence of the two above mentioned ground rents on two of these numbered properties) and $37,760.00 (as to 601-11 West Pratt Street). Consummation of this sale will be completed subject to title verification and the absence of other liens or encumbrances within the time provided by paragraph 3.b. of the aforementioned Memorandum of Understanding.

"The total of such certified values, according to the appraisal report, aggregates $103,924.00 (subject to being reduced by the aforementioned

corrective supplement of Mr. Pinkard allowing for the fact that two of the Greene Street properties are subject to the noted ground rents instead of such properties being in fee simple as assumed by Mr. Pinkard. Thus the certified prices and consequently these option purchase prices will reflect, when the supplement is received, such correction.)

"It is requested now that, as above evidenced, the Katz Family interests have so purchased the above described properties, subject to the railroad side track agreement, and that a sale has thus been accomplished, the leases referred to in the appraisal report of Mr. Pinkard or copies thereof be made available to me for my clients.

"This notice is being delivered by hand today and in addition to being signed by me as the authorized Attorney for the Katz Family interests, as additionally countersigned by Ernestine K. Feldman, individually and as Custodian for her children-stockholders in the above named Corporation, and by Joseph J. Katz, individually and as Custodian for his children-stockholders in the above named Corporation, and by Joseph J. Katz and Nathan Patz, Executors of the Estate of Irene Z. Katz and by Joseph Katz acting through his duly empowered Attorney in Fact, Joseph J. Katz, as their interests were contemplated in the above mentioned Memorandum of Understanding of May 11, 1967."

On 1 September 1967, counsel for the Zamoiskis replied:

"We have already acknowledged receipt of the letters dated August 30, 1967, and August 31, 1967, addressed by you as Attorney for the Katz Family interests to the members of the Zamoiski Family and the corporations owned by the

two families, which letters you delivered to us by hand.

"We are promptly (and still within the fifteen (15) day period referred to by you) notifying you that we reject the attempt to exercise 'separately and independently' the option granted you by the Memorandum of Understanding of May 11, 1967, at the prices set forth in your letters (subject to the correction of prices to reflect certain ground rents).

"We call to your attention that the Memorandum of Understanding of May 11 provided for *one* ('an') option, to be extended successively to each party, 'to purchase the Portland Street property and the combined parcels (b) and (c)' or 'to purchase the Portland Street property or the combined parcels (b) and (c)'. Your August 30 letter elected to purchase the Portland Street property at the price of $35,000.00; having made that election on August 30, your delivery of the August 31 letter is either (1) a nullity, or (2) an amendment of your August 30 exercise so as to effectuate the purchase of 'the Portland Street property and the combined parcels (b) and (c)' at the appraised price of $235,792.00 as an entirety, or (3) constitutes the attempted exercise of the single option provided to the Katz family to purchase the entirety, but such attempted exercise is invalid for the reason that it does not conform with the Memorandum because it does not set forth the correct certified price for the entirety.

"If, prior to 5:30 P.M. D.S.T. today, you prefer to withdraw your August 31 election, or to correct your attempted exercise of the option to purchase the entirety by stating in an amended exercise instrument the correct certified price of $235,792.00, a partner of our firm

will be here to accommodate you by receipting for delivery of your notice."

to which counsel for the Katzes replied on 1 September 1967:

"Upon my return to the office this afternoon, about 4:30 p.m., after keeping an out of the office appointment, your letter of this date delivered by hand to my office in my absence, was brought to my attention.

"We stand upon the optional purchases represented by our letters of August 30, 1967 and August 31, 1967, and assure you that the latter did not withdraw or amend the former, nor was it our intention so to do.

"Rather, the exercises represented thereby are in conformity with the Memorandum of Understanding of May 11.

"If it becomes necessary, though I do not wish to anticipate that this procedure will be required, I have been instructed to advise that we will seek enforcement of the rights and all of them established by those letters of the 30th and 31st of August. Will you please advise me the date upon which the plan for liquidation of Pratt Street Realty was adopted, as recorded by the records and the date upon which notice of that plan was sent to the Internal Revenue Service. This is being delivered to your office by hand this afternoon prior to five fifteen."

Thereafter, the Zamoiski family, having regarded the Katzes' attempted exercise of the option as a nullity, exercised their option for the purchase of 604-618 Portland Street, owned by The Pratt Street Company, for $35,-000.00 and on 14 September 1967, caused the property to be conveyed to The Zamoiski Company.

The Katzes then brought suit in Circuit Court No. 2 of Baltimore City for the enforcement of their rights un-

der the Memorandum, joining The Pratt Street Company and The Zamoiski Company as defendants. From a decree dismissing their bill of complaint, the Katzes have appealed.

Two questions are presented by the appeal: (i) did the Katzes have the right, under the Memorandum, to exercise more than one option? and, (ii) was the Katzes' letter of 30 August 1967 a valid exercise of an option right? The answer to both questions calls for an interpretation of paragraph 3.b. of the Memorandum:

> "It is further now agreed that within fifteen (15) days after the receipt by counsel, as above provided, of Mr. Pinkard's certification of value, the Katz Family shall have an option to purchase the Portland Street property [owned by The Pratt Street Company] *and/or* the combined parcels (b) [212-228 South Greene Street] and (c) [601-615 West Pratt Street] [both owned by The Zamoiski Company] at the prices therefor so certified by Mr. Pinkard * * *." (emphasis supplied).

We willingly concede that the draftsman's choice of language could have been more felicitous, *Bishins v. St. Barnabas Corp.*, 221 Md. 459, 463, 158 A. 2d 94 (1960), but we have no choice but to take the Memorandum as we find it. The commonly accepted meaning of and/or is that it means either *and* or *or*. "And/or. Either *and* or *or*. 'Butter *and/or* eggs' means 'butter and eggs or butter or eggs.' " *Webster's International Dictionary* (2d Ed. 1957); *Batchelor v. Madison Park Corp.*, 25 Wash. 2d 907, 172 P. 2d 268 (1946). See also, *Oman Constr. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 370 S.W.2d 563 (1963); *Thomas v. Penn Mut. Fire Ins. Co.*, 244 S. C. 581, 137 S.E.2d 856 (1964).

It seems quite clear to us that the option given the Katzes by paragraph 3.b. of the Memorandum was cast in the alternative:

(i) "An option to purchase the Portland Street property *and* the combined parcels (b) [212-228 South Greene Street] and (c) [601-615 West Pratt Street]" (emphasis supplied) ;

(ii) "An option to purchase the Portland Street property *or* the combined parcels (b) [212-228 South Greene Street] and (c) [601-615 West Pratt Street]." (emphasis supplied).

If the Katzes had elected the first alternative, the price for the three parcels would have been $235,792. If they elected the second alternative, they could have bought Portland Street for $35,000 *or* the combined parcels 212-228 South Greene Street and 601-615 West Pratt Street for $103,924.

This is because counsel for both the Katzes and the Zamoiskis, in their letter of instructions to Mr. Pinkard, written pursuant to the Memorandum, asked that the parcels be appraised separately, and then be given an alternative valuation if sold as an entirety.

We agree with the conclusion reached by the chancellor below, that the Katzes could exercise only one of three options: to purchase Portland Street *and* Greene Street and Pratt Street at their combined values, or, in the alternative, to purchase Portland Street, on the one hand, *or* Greene Street and Pratt Street, on the other, at their separate values.

It seems to be well established that the principle of equitable or legal election may be invoked against an optionee who holds alternative options:

> "A party to a contract giving alternative rights, who exercises his rights of choice and makes an election, is concluded thereby under a determination by election at law, though under a determination by election in equity a mere acceptance does not conclusively evidence election. But where a party to an unambiguous contract which gives him alternative rights, elects one of the rights, he cannot rescind his election

merely because he regrets he did not select the other, or because he had forgotten the terms of the contract which he did not read, and which he had the opportunity of reading, at the time of the election." James, *Option Contracts* § 118 (1916) at 45.

See also, *Twaits v. Pennsylvania R.R. Co.*, 77 N. J. Eq. 103, 75 A. 1010 (1910) ; *Collins v. Whigham*, 58 Ala. 438 (1877). The election converts the alternative undertaking into a single contract. Restatement, *Contracts* §§ 325, 344 (1932) ; 5 Williston, *Contracts* § 1407 (Rev. Ed. 1957) at 3919. Compare *Zalis v. Walter*, 180 Md. 120, 23 A. 2d 26 (1941).

We differ with the chancellor, however, in his conclusion that the over-reaching contained in the Katz letter of 30 August 1967 made the exercise of the option conditional and therefore invalid.

It will be remembered that the paragraph in question read:

> "It is noted that the fifteen (15) days period permitted by said Instrument [the Memorandum of Understanding] does not expire until the close of September 1, 1967 and until then is still open to other possible option exercises by the Katz Family interests referred to with respect to other properties appraised by the above named Realtor."

It is well settled that to be valid, the exercise of an option must be unequivocal and in accordance with the terms of the option, *Simpers v. Clark*, 239 Md. 395, 401, 211 A. 2d 753 (1965) ; *Foard v. Snider*, 205 Md. 435, 446, 109 A. 2d 101 (1954) ; Restatement, *Contracts* § 58 (1932) at 65; § 59 at 65-66. However, "* * * a proper notice of acceptance is not made inoperative by the fact that it is accompanied by a proposal for some substitute arrangement subject to the other party's consent * * *." 1 A. *Corbin on Contracts* § 264 (1963) at 523-24.

1 Williston, *Contracts* § 79 (3d Ed. 1959) at 261-62 takes the same view:

> "Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocably to accept the offer whether such request is granted or not, a contract is formed. So an inquiry as to the meaning of an offer, or a request for an explanation, will not invalidate a positive acceptance; nor will a request for a modification of the offer coupled with an unqualified acceptance not dependent on the granting of the request. * * *."

So do the cases, *Pravorne v. McLeod*, 79 Nev. 341, 347, 383 P. 2d 855, 858 (1963); *Moss v. Cogle*, 267 Ala. 208, 101 So. 2d 314 (1958); *Duprey v. Donahoe*, 52 Wash. 2d 129, 323 P. 2d 903 (1958); *Orr v. Doubleday Page & Co.*, 223 N. Y. 334, 119 N. E. 552, 1 A.L.R. 338 (1918) and other texts. Restatement, *Contracts, supra*, § 62 at 68; 91 C.J.S. *Vendor and Purchaser* § 10a (1955) at 852, 855; 17 Am.Jur.2d *Contracts* § 65 (1964) at 404. See also *Burkhead v. Farlow*, 266 N. C. 595, 146 S.E.2d 802 (1966); compare *Hutcherson v. Cronin*, 426 S.W.2d 638 (Tex. Ct. of Civ. App. 1968). If the exercise of the option is positive and unequivocal, the inclusion of an inquiry, a request for an additional benefit, a suggestion of a modification will not invalidate an acceptance if it is clear that the acceptance is not conditioned on the granting of the request. What the Katzes did in their letter of 30 August was to add not a condition, but a completely extraneous comment covering their interpretation of the Memorandum.

When counsel for the Zamoiskis attempted to reject the Katzes' letter as "a nullity," counsel for the Katzes replied:

> "We stand upon the optional purchases rep-

resented by our letters of August 30, 1967 and August 31, 1967, and *assure you that the latter did not withdraw or amend the former, nor was it our intention so to do.*" (emphasis supplied).

Since this was written before the 15 day period provided for by the Memorandum expired on 1 September 1967, we conclude that the letter of 30 August as confirmed by the letter of 1 September was an unequivocal exercise of the option to purchase the Portland Street property for $35,000. It was the letter of 31 August, which purported to exercise a second option, never accorded in the first place, which was the nullity.

We have not overlooked the Katzes' argument that the Memorandum should be interpreted in the light of the earlier drafts. The Memorandum, which is clear and unambiguous, was an integration of the negotiations and drafts. Where the language of the integration is clear, the true test of what was meant is not what the party to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Pemrock Inc. v. Essco Co.*, 252 Md. 374, 249 A. 2d 711 (1969); *Chesapeake Isle, Inc. v. Rolling Hills Dev'l Co.*, 248 Md. 449, 453, 237 A. 2d 1 (1968); *Ray v. Eurice*, 201 Md. 115, 127, 93 A. 2d 272 (1952).

We think that the chancellor's decree dismissing the bill of complaint should be reversed, and that the case should be remanded for the entry of a decree, requiring The Zamoiski Company to convey the property at 604-618 Portland Street to the appellants upon receipt of the sum of $35,000, with interest at 6% from 14 September 1967, costs of settlement to be apportioned and adjustments to be made as of that date as provided in paragraph 3.c. of the Memorandum. We are mindful of the fact that on remand further proceedings may be necessary on the issue of damages claimed and counterclaimed.

> *Decree reversed, case remanded for entry of decree conformable with this opinion, costs to be equally divided.*