Joseph D. STOUT, etc., Plaintiff,

v.

HOME LIFE INSURANCE COMPANY, Defendant.

Civ. No. H–85–4172.

United States District Court, D. Maryland.

June 23, 1986.

James A. Sullivan, Rockville, Md., for plaintiff.

J. Snowden Stanley, Jr., Joseph P. Gill, and Semmes, Bowen and Semmes, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Chief Judge.

Presently before the Court in this civil action are cross motions for summary judgment filed by both the plaintiff and the defendant. Plaintiff Joseph D. Stout has brought suit individually and as personal representative of the estate of his deceased brother, Dr. Henry W. Stout (hereinafter "Dr. Stout"). Plaintiff claims that he personally is the beneficiary under two life insurance policies purchased by Dr. Stout from defendant Home Life Insurance Company (hereinafter "Home Life"), and that he is also the beneficiary as personal representative of the estate of Henry W. Stout under two other Home Life insurance policies purchased by Dr. Stout. In opposing plaintiff's claims, defendant Home Life asserts that Dr. Stout, before his death, terminated all four of these life insurance policies for their cash surrender values.

Memoranda have been filed in support of and in opposition to the pending cross motions for summary judgment, as well as exhibits and an affidavit. Oral argument has been heard in open court, and supplemental materials have been submitted by the parties after the hearing. For the reasons to be stated, defendant's motion for

summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

## I

### The Facts

The material facts are not in dispute. Between 1955 and 1975, Dr. Stout purchased five life insurance policies from defendant Home Life, four of which are at issue in this suit. Richard W. Hynson was the Home Life agent who completed and submitted the applications which resulted in the issuance of each of these policies to Dr. Stout. On December 14, 1955, Home Life issued life insurance Policy No. 652,-689 to Dr. Stout. Home Life insurance Policy No. 817,309 was issued to Dr. Stout on February 19, 1965. On November 10, 1969, Home Life issued life insurance Policy No. 918,573 to Dr. Stout. Policy No. 918,573 was created when Dr. Stout exercised a conversion privilege in the Family Income Rider attached to another policy he purchased, namely, Home Life Policy No. 817,310. On January 31, 1975, Home Life issued life insurance Policy No. 978,423F to Dr. Stout. Policy No. 978,423F was created when Dr. Stout exercised his right of conversion of the one-year term Additional Dividend Option on his Home Life Policy No. 817,310.[1]

Plaintiff Joseph Stout was the primary beneficiary under Policy Nos. 652,689 and 918,573. Policy Nos. 817,309 and 978,423F named American Security and Trust Company (hereinafter "American Security") as the designated beneficiary. In Paragraph 6 of his complaint, plaintiff asserts that American Security has indicated that it will assign all of its interests in Policy Nos. 817,309 and 978,423F to him. However, plaintiff now contends that American Security never had any interest in these policies and that these allegations of the complaint are erroneous. For the purposes of the pending motions, it is conceded that it may be assumed that plaintiff, as personal representative of Dr. Stout's estate, is the proper party to assert a claim for the proceeds of Policy Nos. 817,309 and 978,423F.

In 1983, Dr. Stout decided to surrender these four Home Life life insurance policies, receive their cash surrender values and purchase a Summit National Life Insurance Company (hereinafter "Summit National") policy of term insurance in the amount of $250,000. On November 22, 1983, Summit National issued Dr. Stout a $250,000 term insurance policy, No. SN8339128, naming Dr. Stout's fiancee Lauriel Hall as the beneficiary. Thereafter, on December 21, 1983, Dr. Stout signed forms entitled "Request for Termination of Insurance or Annuity" for life insurance Policy Nos. 652,689, 918,573, and 978,423F. On December 31, 1983, Dr. Stout signed an identical "Request for Termination" form for life insurance Policy No. 817,309. Each of these forms included a clause which provided:

> In consideration of the payment by Home Life Insurance Company (of New York) of the cash surrender value of the coverage indicated below, the undersigned hereby release(s) and discharge(s) said Company from all claims, demands, and liability thereunder and consent(s) to its termination.

On each of the termination forms, Dr. Stout also checked a box directing Home Life to "Terminate entire policy/contract." Below this box on the Request for Termination forms for Policy Nos. 817,309 and 978,423F, the following sentence had been typed: "Please make check payable to Paul Revere Variable Annuity Insurance Co., Contract No. 101053." Dr. Stout returned each of these Request for Termination forms to Home Life along with the original copies of the Home Life insurance policies which he was surrendering. Three of the termination requests were received by Home Life on January 4, 1984, and the fourth was received by Home Life on January 13, 1984.

Dr. Stout died on January 18, 1984. Soon after Dr. Stout's death, life insurance agent Hynson called Home Life and re-

---

1. The aggregate face value of the four policies at issue here is $104,600.

quested that the termination requests which Dr. Stout had sent to Home Life be voided. Home Life refused to honor Mr. Hynson's request. Thereafter, in accordance with Dr. Stout's termination requests, Home Life tendered checks for the cash surrender value of his four Home Life policies at issue here to plaintiff.[2] Plaintiff, however, refused to accept the checks, and they were returned to Home Life. Summitt National has paid Lauriel Hall the full $250,000 due her as beneficiary under Policy No. SN8339128.

## II

### Discussion

A motion for summary judgment filed pursuant to Rule 56, F.R.Civ.P., should be granted "forthwith" if the pleadings, discovery and affidavits filed in the case show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c). One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed by a defendant and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* Rule 56(e). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in the trial of those issues addressed in a motion for summary judgment.

If there is no genuine dispute as to any material fact, summary judgment should be granted to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition. *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969). In this particular case, both parties have agreed that the issues may be resolved by way of rulings on the cross motions for summary judgment that have been filed.

In his memorandum of law opposing defendant's motion for summary judgment and supporting his own summary judgment motion, plaintiff first raises an evidentiary issue. Plaintiff contends that the Court must disregard the affidavit of Richard Hynson relied upon by defendant. Mr. Hynson's affidavit establishes facts concerning the locations at which Dr. Stout completed the applications for his Home Life insurance policies and at which he paid the first annual premiums for these policies. This information is clearly relevant for the purpose of determining the law which governs the construction of Dr. Stout's Home Life policies. In objecting to the Court's consideration of the Hynson affidavit, plaintiff asserts that under the Maryland Dead Man's Statute, § 9–116 Cts. & Jud.Proc., Ann.Code of Md., a party to a proceeding by or against a personal representative may not testify concerning any transaction with or statement made by a dead person.

As plaintiff concedes, the Dead Man's Statute could apply only to Policy Nos. 817,309 and 978,423F, because these are the only policies under which plaintiff asserts a claim as personal representative of Dr. Stout's estate. Policy Nos. 918,573 and 652,689 named plaintiff as beneficiary, and the Dead Man's Statute is inapplicable to a suit brought by the beneficiary of an insurance contract. *Guernsey v. Loyola Federal Savings & Loan Ass'n,* 226 Md. 77, 80, 172 A.2d 506 (1961). As the *Guernsey* Court also stated, the Dead Man's Statute must be strictly construed. It is therefore well established that an officer, director, shareholder or employee of a corporate party to a cause of action is not disqualified as a party from testifying under the Dead Man's Statute. *Id.; see also* 23 M.L.E., *Witnesses* § 43 (1962).

■ If these principles are applied to the facts of this case, it is clear that Mr. Hynson is not disqualified as a party from furnishing pertinent evidence in this case. Accordingly, the Maryland Dead Man's

---

**2.** The aggregate amount of these cash surrender values is approximately $33,415.

Statute does not bar this Court from considering the affidavit of Mr. Hynson in ruling on these motions for summary judgment.

The parties have also disagreed over the law applicable to this case. After considering the arguments and the applicable authorities, this Court concludes that the construction of these insurance contracts is to be governed by either the law of Maryland or the District of Columbia. The Court further concludes that the law of Maryland and of the District of Columbia is the same insofar as the legal principles applicable here are concerned.

Jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Therefore, this Court must look to the conflict of laws rules prevailing in Maryland. *Klaxon Company v. Stentor Electric Manufacturing Company, Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Maryland law, contracts are to be construed in accordance with the law of the state in which they are made. *Riviera Beach Volunteer Fire Company, Inc. v. Fidelity and Casualty Company of New York*, 388 F.Supp. 1114, 1119–20 (D.Md.1975); *Debbis v. Hertz Corporation*, 269 F.Supp. 671, 682 (D.Md.1967). Furthermore, in Maryland, "[t]he *locus contractus* is the place where the last act is performed which makes an agreement a binding contract." *Grain Dealers Mutual Insurance Company v. Van Buskirk*, 241 Md. 58, 66, 215 A.2d 467 (1965); *Sun Insurance Office, Ltd. v. Mallick*, 160 Md. 71, 81, 153 A. 35 (1931). Thus, this Court must apply the law of the state in which the last act was performed which made these insurance contracts binding.

■ Part I of the application for Home Life insurance Policy No. 652,689, which was signed by Dr. Stout, contains the following provisions:

The insurance applied for shall take effect if I am insurable therefore in every respect under the Company's rules, limits and standards when both:

(a) the full first premium on basis specified above has been paid ..., and

(b) Parts I and II of this application have been completely filled out and signed.

Part II of the application for Policy No. 652,689 was signed by Dr. Stout on December 8, 1955. According to Mr. Hynson, Part I of the application was signed and the first annual premium was paid by Dr. Stout on December 14, 1955 in Washington, D.C. Therefore, the last act by which Policy No. 652,689 took effect occurred in the District of Columbia. Accordingly, District of Columbia law governs the construction of Policy No. 652,689.

■ The application for Policy No. 817,309 contains similar provisions concerning conditions which must be satisfied before the policy will take effect. The application provides:

Conditions as to Insurance Taking Effect.... the insurance under the policy applied for shall take effect on the date of full compliance with all three of the following Conditions Precedent thereto:

1. Completion, fully signed, of Application Parts I, II and any Supplements; and

2. Payment of the first premium, ...; and that

3. On the later of the dates of the occurrence of the acts specified in Conditions Precedent 1 and 2, the proposed insured is insurable for such policy in every respect, under the Company's rules, limits and standards.

The final act necessary to make this second insurance contract fully effective occurred on January 8, 1965 when Dr. Stout signed Part II of the insurance application in Silver Spring, Maryland. Thus, the construction of life insurance Policy No. 817,309 is to be governed by Maryland law.

Policy No. 918,573 was created by Dr. Stout when he exercised a conversion privilege available under Home Life Policy No. 817,310. The application for a policy change which Dr. Stout had to complete for Policy No. 918,573 contained the following provision:

The requested change shall not take effect unless either (a) any cost of change, as computed by the Home Office of the Company, has already been paid or is paid to the Company simultaneously herewith....

The application for Policy No. 918,573 was completed and signed by Dr. Stout, and the first premium paid, on October 29, 1969, in Silver Spring, Maryland. Thus, Policy No. 918,573 is governed by Maryland law.

■ Dr. Stout also created Policy No. 978,423F when he exercised a conversion privilege available under Policy No. 817,-310. Richard Hynson states that Dr. Stout completed and signed an application for a policy change on December 2, 1974 in either Silver Spring, Maryland, or in the District of Columbia. However, even though Policy No. 978,423F was created as a result of Dr. Stout's exercise of his right of conversion, Dr. Stout also had to execute a separate application because he was applying for a disability waiver of premium, which was a non-contractual conversion. Part I of this separate application for Policy No. 978,423F contains the following provisions:

Conditions As To Insurance Taking Effect: Acceptance by the Company of this application and the issuance of the Company's first premium receipt does not create insurance coverage (either temporary, interim or permanent) until the conditions precedent in "A" below are met, and insurance will commence only on the date hereafter specified.

A. Insurance under the policy applied for in this application shall take effect ... on the date of full compliance with the following conditions precedent ...:

1. The application, as defined above, is complete; and

2. The first premium has been paid....

Dr. Stout completed this separate application for Policy No. 978,423F on December 12, 1974 in the District of Columbia, and the first premium was paid. Therefore, the last act by which Policy No. 978,423F took effect occurred in the District of Columbia. Accordingly, District of Columbia law governs the construction of Policy No. 978,423F.

Accordingly, when the facts here are considered in the light of the applicable provisions of each of the four life insurance policies at issue in this case, this Court concludes that each policy is governed by either Maryland law or by District of Columbia law. District of Columbia law applies as to some of the policies even though under general conflict of laws principles, Maryland law would be controlling. The Restatement of the Law, Second, Conflict of Laws § 192 (1971), states:

The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for.

Dr. Stout was domiciled in Maryland at the time he applied for each of his Home Life insurance policies. Were the Court unable to determine the applicable law under pertinent clauses in the insurance policies and in the applications, general choice of law principles would have favored the application of Maryland law. However, as noted, the pertinent provisions themselves require this Court to apply either Maryland or District of Columbia law.

In its motion for summary judgment, defendant Home Life claims that Dr. Stout properly surrendered life insurance Policy Nos. 652,689 and 918,573 for their cash value, and that therefore plaintiff is not entitled to receive life insurance benefits under these policies. On December 21, 1983, Dr. Stout completed and signed a Request for Termination of Policy No. 652,-689 pursuant to the following provision in his insurance contract:

SURRENDER FOR CASH VALUE. In lieu of such term insurance and of such reduced paid-up insurance, the policy may, within three months after the due date of such unpaid premium or install-

ment, be surrendered for its cash value as of such due date....

On the same day, Dr. Stout also signed a Request for Termination for Policy No. 918,573, pursuant to a similar provision in that insurance contract which states:

> Surrender for Cash Value—*you may terminate your policy for its cash value.* In lieu of a Paid-Up Insurance Non-Forfeiture Benefit, this policy may be surrendered on written request within 60 days after the due date of the premium in default for its cash surrender value as of that date. (Emphasis in original).

Defendant contends that, pursuant to these provisions, Dr. Stout properly accepted Home Life's continuing offer allowing him to surrender these two policies for their cash surrender value.

In his briefs filed in opposition to defendant's motion and in support of his own motion for summary judgment, plaintiff contends that Dr. Stout could not properly accept defendant Home Life's offer to pay the cash value for the surrendered policies because these two policies were not yet in default.[3] Plaintiff asserts that Maryland and District of Columbia courts would follow New York law on this issue, and in particular the holding in *Landy v. New York Life Insurance Company,* 170 Misc. 942, 11 N.Y.S.2d 622 (1938). In *Landy,* the Court held that if a provision for cash surrender value requires a policy to be in default prior to the exercise of such option, any request for surrender prior to the premium default is not an effective acceptance. The Court reasoned that such a request is an offer by the insured, and acceptance of it must be communicated by the insurer before the insured dies or otherwise revokes the offer.

By way of reply to plaintiff's contentions, defendant asserts that neither Maryland law nor District of Columbia law would follow the *Landy* rule. Defendant

contends that the New York position is in the minority and that other courts have construed similar cash surrender provisions in insurance policies to allow surrender prior to a default.

■ After considering the briefs and pertinent authorities, this Court concludes that Dr. Stout was able to and did in fact before his death exercise his right to surrender his four Home Life insurance policies under the applicable surrender clauses. Maryland courts give the normal and customary meaning to the terms of an insurance contract, *see Baltimore Contractors, Inc. v. Circle Floor Company,* 318 F.Supp. 106, 110 (D.Md.1970), as do District of Columbia courts. Although neither party has cited a Maryland or District of Columbia case directly on point, this Court is satisfied that the clear majority of the courts which have considered the question allow insurance policyholders with policies similar to those at issue here to surrender them for cash value prior to default.

In *Fennell v. John Hancock Mutual Life Insurance Company,* 256 Ala. 15, 53 So.2d 556 (1951), the Court had to determine whether an insured could surrender his policy for its cash value prior to default when the policy provided he could surrender it "within thirty-one days after default in the payment of a subsequent premium." In holding that the insured could surrender his policy prior to default, the Court stated (53 So.2d at p. 558):

> The clause, 'within thirty-one days after default in the payment of a subsequent premium,' should not be construed as precedent to the right to elect to settle under option A, but merely a limitation within which time the insured must make an election after default in the payment of premium.

---

**3.** At oral argument, plaintiff's counsel informed the Court that, since Policy Nos. 817,309 and 978,423F contain Surrender for Cash Value clauses virtually identical to the clause in Policy No. 918,573, plaintiff was also moving for summary judgment on this same ground as to those

two policies. The Court will accordingly consider the parties' arguments based on the Surrender for Cash Value provisions insofar as all four of Dr. Stout's Home Life insurance policies are concerned.

Similar holdings have been reached in *Manhattan Life Insurance Company v. Allison*, 100 Colo. 1, 64 P.2d 1265 (1937); *Day v. Metropolitan Life Insurance Company*, 11 Cal.App.2d 681, 54 P.2d 502 (1936); and *Murphy v. Home Life Insurance Company of America*, 47 D & C 197 (Pa.1942). Furthermore, 3A *Appleman, Insurance Law and Practice* § 1752 at 9 (1967) cites these holdings as "the better rule" in construing similar cash surrender clauses in insurance contracts. In view of these authorities, this Court holds that District of Columbia and Maryland courts would follow *Fennell* and would allow Dr. Stout to accept Home Life's offer to surrender all four of his Home life insurance policies for their cash values prior to default. Dr. Stout effectively terminated Policy Nos. 652,689 and 918,573 on December 21, 1983 when he completed and signed the Request for Termination forms for the policies. Accordingly, this Court will grant the motion for summary judgment of defendant Home Life with respect to all four policies. Furthermore, the Court will deny plaintiff's motion for summary judgment with respect to these policies.

■ Insofar as Home Life Policy Nos. 817,309 and 978,423F are concerned, plaintiff has presented another argument. Plaintiff contends that Dr. Stout merely made a counter-offer to Home Life when he signed the forms on December 21 and 31, 1983, because he added to the termination form the request, "Please make check payable to Paul Revere Variable Insurance Company." Plaintiff argues that defendant Home Life failed to accept Dr. Stout's counter-offer prior to his death, and that therefore these policies were never effectively terminated.

There is no merit to this contention. As the Court stated previously, Maryland law governs the construction of Policy No. 817,-309 and District of Columbia law governs Policy No. 978,423F. As to both of these policies, general principles of contract law support defendant's position. In *Katz v. Pratt Street Company*, 257 Md. 103, 118, 262 A.2d 540 (1970), the Court observed that, to be valid, the exercise of an option must be unequivocal and in accordance with the terms of the option. However, the *Katz* Court cited 1A *Corbin on Contracts* § 264 (1963) at 523–24, as supporting the principle that "a proper notice of acceptance is not made inoperative by the fact that it is accompanied by a proposal for some substitute arrangement subject to the other party's consent." *Id.* The *Katz* Court also quoted Williston, *Contracts* § 79 (3d ed. 1959) at 261–62 as further support for this proposition (257 Md. at 119):

> Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocably to accept the offer whether such request is granted or not, a contract is formed. So an inquiry as to the meaning of an offer, or a request for an explanation, will not invalidate a positive acceptance; nor will a request for a modification of the offer coupled with an unqualified acceptance not dependent on the granting of the request.

Applying these principles to this case, this Court finds and concludes that Dr. Stout unequivocally accepted Home Life's continuing offer that he could terminate the policies in question and receive their cash surrender value. On the "Request for Termination" forms for Policy Nos. 817,309 and 978,423F, Dr. Stout checked the box directing Home Life to "[t]erminate entire policy/contract." At most, by requesting Home Life to make the check payable to Paul Revere, Dr. Stout was requesting merely a modification of the offer coupled with an unqualified acceptance not dependent on the granting of the request. *See Williston, supra.* Thus, Dr. Stout properly terminated the two policies at issue when he completed and signed the "Request for Termination" forms for each policy.

**36**

For the reasons stated, it is this 23rd day of June, 1986, by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiff's motion for summary judgment be and the same is hereby denied;

2. That defendant's motion for summary judgment be and the same is hereby granted; and

3. That judgment is hereby entered in favor of the defendant with costs.